William **DAVIS** and Judith Davis, Husband and Wife, Plaintiffs,

v.

**MODINE MANUFACTURING COMPANY**, Defendant.

Civ. A. No. 79–1655.

United States District Court, D. Kansas.

Nov. 10, 1981.

Fred W. Phelps, Jr., Topeka, Kan., for plaintiffs.

Marc A. Hurt, Atherton, Hurt & Sanderson, Emporia, Kan., Robert H. Joyce, Seyfarth, Shaw, Fairweather, & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

William and Judith Davis, husband and wife, are each black and legally blind. They have sued defendant company Modine Manufacturing Company (Modine) under 42 U.S.C. §§ 1981 and 1988, Sections 503 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 793, 794, and, by way of pendent jurisdiction, the Kansas Act Against Discrimination, 44 K.S.A. § 44–1001, et seq., alleging employment discrimination. William Davis was employed by defendant at its manufacturing plant in Emporia, Kansas. Plaintiff's complaint alleges that he was successful and competent at his work, but he was still discharged. Judith Davis applied for employment with defendant a number of times but was never hired.

Defendant Modine moves for summary judgment on the grounds that Sections 503 and 504 do not provide a private cause of action, that plaintiffs' § 1981 claims are non-specific and lack factual support, and that pendent jurisdiction should not be exercised. Some of the defendant's grounds more properly support a motion to dismiss, and will be dealt with as a motion to dismiss. The Court will first deal with arguments supporting a motion to dismiss the Rehabilitation Act claims.

Section 503, 29 U.S.C. § 793(a), provides in pertinent part:

"Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States."

Section 503, 29 U.S.C. § 793(b) provides: "If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto."

Section 504, 29 U.S.C. § 794, provides: "No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

## THE REHABILITATION ACT—SECTION 503

The question of whether Section 503 provides a private cause of action has been frequently addressed in the federal courts recently. Those courts which have considered the question are divided on the answer. Reported cases in which an implied cause of action is found include: *Davis v. United Airlines*, 25 FEP Cases 566 (E.D.N.Y.1980); *Chaplin v. Consol. Edison Co. of N.Y., Inc.*, 482 F.Supp. 1165 (S.D.N.Y.1980); *Clarke v. FELEC Services, Inc.*, 489 F.Supp. 165 (D.Alaska 1980); *California Paralyzed Veterans Ass'n v. F.C.C.*, 496 F.Supp. 125 (C.D.Cal.1980); *Hart v. County of Alameda*, 485 F.Supp. 66 (N.D.Cal.1979); *Drennon v. Philadelphia General Hospitals*, 428 F.Supp. 809 (E.D.Pa.1977); *Duran v. City of Tampa*, 430 F.Supp. 75 (M.D.Fla.1977). Cases in which no implied cause of action was found include *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226 (7th Cir.1980); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.1980), *cert. den.*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980); *Auffant v. Searle & Co.*, 25 FEP Cases 1254 (D.P.R.1981); *Brown v. American Home Products Corp.*, Unpub. No. 81–2129 (D.Kan. filed Aug. 28, 1981); *Moon v. Santa Fe Railroad Co.*, 22 FEP Cases 1252 (D.Kan.1980); *Anderson v. Erie Lackawanna Railway Co.*, 468 F.Supp. 934 (N.D.Ohio 1979); *Miglets v. Erie Lackawanna Railway Co.*, 19 FEP Cases 379 (N.D. Ohio 1979); *Wood v. Diamond State Telephone Co.*, 440 F.Supp. 1003 (D.Del.1977).

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court outlined an approach for deciding whether a private right of action should be implied from a federal statute. The approach listed four factors relevant to the inquiry:

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby*,

241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent explicit or implicit, either to create such a remedy or to deny one? See, e. g., *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646 (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, e. g., *Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See, *Wheeldin v. Wheeler*, 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963); cf. *J. I. Case Co. v. Borak*, 377 U.S. 426, 434, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394–395, 91 S.Ct. 1999, 2003–2004, 29 L.Ed.2d 619 (1971); id., at 400, 91 S.Ct. at 2006 (Harlan, J., concurring in judgment)."

The Court recently stated that "Combined, these four factors present the relevant inquiries to pursue in answering the recurring question of implied causes of action." *California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981).

■■■ While the ultimate issue is whether Congress intended to create a private cause of action, see *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the four factors specified in *Cort* remain the criteria through which the intent may be discerned. *California v. Sierra Club*, 451 U.S. at 293, 101 S.Ct. at 1779; *Davis v.*

*Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979). Not all the factors are to be given equal weight. The last two factors are only relevant if the first two factors give indications of congressional intent to create the private judicial remedy. *California v. Sierra Club*, supra, 451 U.S. at 293, 101 S.Ct. at 1779.

■■■ The first inquiry is whether the plaintiffs are "of the class for whose *especial* benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff?" *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088. To answer this question, the Court must look to the language of the statute itself to see if it expressly identifies the class Congress intended to benefit and is drafted with an unmistakable focus on the benefitted class, as opposed to being the kind of language customarily found in criminal statutes and other laws enacted for the protection of the general public. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 1954, 60 L.Ed.2d 560 (1979). The language of § 503 meets this test. Section 503(a) directs that contracts with federal contractors must contain clauses requiring the contractor to "take affirmative action to employ and advance in employment *qualified handicapped* individuals." (Emphasis supplied.) Section 503(b) authorizes "handicapped individuals" to file complaints alleging noncompliance with the Department of Labor. These elements of § 503 clearly focus on the class benefitted as opposed to the public at large. *California Paralyzed Veterans Ass'n v. F.C.C.*, 496 F.Supp. at 128: *Chaplin v. Consol. Edison Co. of N.Y. Inc.*, 482 F.Supp. at 1168 and cases cited therein; *Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1074 (J. Goldberg dissenting).

If this were the only test, the first *Cort* factor would clearly be satisfied.

"But the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation."

*Universities Research Ass'n. Inc. v. Coutu*, 450 U.S. 754, 771, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981).

Obviously, when a court is trying to decide whether an *implied* private cause of action exists, there is not going to be *express* language in the statute creating such a cause of action. While the Supreme Court is obviously not requiring that there be express language in the statute creating a private judicial right of enforcement, it has noted that some types of statutory language are more likely to show that Congress intended to create a private cause of action.

In *Cannon*, the Court found a private cause of action under Section 901(a) of Title IX of the Education Amendments of 1972, which provided in pertinent part that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." The *Cannon* court labeled such language as "right-or-duty-creating language," and said such language "has generally been the most accurate indicator of the propriety of implication of a cause of action." *Cannon v. University of Chicago*, 441 U.S. at 690, n. 13, 99 S.Ct. at 1954, n. 13. The Court cited other cases in which private causes of action had been implied, such as *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (42 U.S.C. § 1982: "All citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof."); and *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1968) (42 U.S.C. § 1973c: "No person shall be denied the right to vote . . ."), noting that the statutory language in such cases "explicitly conferred a right directly on a class of persons that included the plaintiff in the case." *Cannon v. University of Chicago*, 441 U.S. 690, 99 S.Ct. at 1954, n. 13. The Court noted:

> "There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefitted class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices." (441 U.S. at 690–91, 99 S.Ct. at 1955.)

The language of § 503(a) clearly does not match the pattern the Court identified in *Cannon* as the most accurate indicator of an intention to create a private remedy. The language appears to be more like a simple ban on discriminatory conduct. There thus appears to be less reason to infer a private remedy than if the language of § 503 had fit the pattern of Title IX. On the other hand, there appears to be a clear intent to benefit the class of handicapped persons and the language does *require* that affirmative action clauses be incorporated in all covered contracts. It is the Court's opinion that while the language does not fit the pattern most appropriate for finding an implied remedy, the first *Cort* question, on balance, must be answered in the affirmative. The balance is a close one, however, and the other *Cort* factors must be carefully scrutinized.

■■ "Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one?" *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088. It has been recognized that "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." *Cannon v. University of Chicago*, 441 U.S. at 694, 99 S.Ct. at 1956. This statement holds true in this case, as the legislative history of § 503 is silent on whether Congress intended to create or deny a private cause of action under the section. See *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d at 1241; *Chaplin v. Consol. Edison Co. of N.Y., Inc.*, 482 F.Supp. at 1168. The absence of anything in the legislative history indicating an intention to confer a private right of action hardly helps the plaintiffs, but does not automatically undermine their position. *Transamerica*

*Mortgage Advisors, Inc. v. Lewis*, 444 U.S. at 18, 100 S.Ct. at 246. The failure of Congress to expressly consider a private remedy is not inevitably inconsistent with the intent to make such a remedy available. *Cannon v. University of Chicago*, 99 S.Ct. at 1953.

In this case, the Court must look to other evidence of congressional intent. *California Paralyzed Veterans Ass'n. v. F.C.C.*, 496 F.Supp. at 129. Evidence of congressional intent may be found in the legislative history of the Rehabilitation Act Amendments of 1974 (the 1974 Amendments) and the attorney's fees provisions of the Rehabilitation, Comprehensive Services, and Developmental Disability Amendments of 1978 (the 1978 Amendments).

Some courts have found indications of congressional intent in the statement contained in the report of the Senate Labor and Public Welfare Committee on the 1974 Amendments:

"that sections 503 and 504 be administered in such a manner that a consistent, uniform, and effective federal approach to discrimination against handicapped persons would result."

S.Rep.No. 93–1297, 93rd Cong. 2nd Sess., reprinted in 1974 U.S.Code Cong. & Admin. News, pp. 6373, 6391.

Judge Orrick, of the Northern District of California, concluded that:

"In light of the rather express congressional intent that a private remedy be available to enforce Section 504, the emphasis on uniformity suggests that Congress contemplated the same scheme with respect to Section 503."

*Hart v. County of Alameda*, 485 F.Supp. 66 (N.D.Cal.1979).

The language dealing with the uniformity and consistency may well show that:

"Congress meant that the two responsible agencies were not to work at cross purposes or to duplicate each other's efforts, not that identical methods of enforcement were envisioned."

*Anderson v. Erie Lackawanna Ry. Co.*, 468 F.Supp. at 939.

When the Committee statement is put in context, the interpretation by the court in *Anderson* appears reasonable. The language in the Committee statement following the portion quoted by Judge Orrick reads:

"Thus, federal agencies and departments should cooperate in developing standards and policies so that there is a uniform, consistent federal approach to these sections."

S.Rep.No. 93–1297, 93rd Cong. 2nd Sess., reprinted in 1974 U.S.Code Cong. & Admin. News, pp. 6373, 6391.

One court which recently found that a private cause of action exists under § 503 concluded:

"It thus appears that the command that sections 503 and 504 be administered uniformly may only indicate Congress' concern with the potential for conflicting regulations promulgated by the different agencies responsible for enforcing the statutes, and is not conclusive on the question whether Congress intended to create or deny a private cause of action under 503(a)."

*Chaplin v. Consol. Edison Co. of N.Y., Inc.*, 482 F.Supp. at 1170.

Other judges have found the Senate debate remarks of Senator Stafford concerning the 1974 Amendments relevant. See *California Paralyzed Veterans Ass'n v. F.C.C.*, 496 F.Supp. at 130; *Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1096 (J. Goldberg dissenting). Senator Stafford, ranking minority member of the Subcommittee on the Handicapped of the Committee on Labor and Public Welfare and a leading advocate of the legislation, referred to Sections 503 and 504 along with Title VI and Title IX, quoted part of the Senate report, and then stated:

"As the Senators are aware, the Sections I have just cited establish Federal Government policy as they relate to programs receiving federal financial assistance and the prohibition against discrimination on any basis. It was the committee's intent that the enforcement under Sections 503 and 504 would be similar to

that carried out under Section 601 of the Civil Rights Act and 901 of the Education Amendments of 1972.

"I cannot stress strongly enough the need for strong enforcement of sections 503 and 504."

120 Cong.Rec. 30551 (1974).

Senator Stafford's statement concerning the Senate report supports a finding that Congress intended that enforcement of 503 and 504 be similar to that under Title VI and Title IX. As Judge Goldberg of the Fifth Circuit pointed out:

"Senator Stafford's statement, developing the themes of the report, expressly recognizes the similarity of the original congressional intent underlying §§ 503 and 504, and a further similarity between that underlying those sections and Title VI and Title IX. In Cannon, in which the Supreme Court held that a private cause of action existed under Title IX, it relied heavily on expressions of congressional understanding that Title IX was to have similar enforcement mechanisms to those of Title VI and that a private cause of action existed under the latter provision. Cannon, supra, 99 S.Ct. at 1956–60. In this case, one again finds Congress building on its understanding of the enforcement mechanisms of Title VI and Title IX. In sum, this material constitutes at least some evidence that Congress contemplated a private cause of action under § 503."

Rogers v. Frito-Lay, Inc., 611 F.2d at 1096–1097 (J. Goldberg dissenting).

This Court believes that while standing alone the evidence of congressional intent to be gleaned from the 1974 Amendments forms only a slender reed upon which to base any finding on congressional intent to create a private cause of action, it does provide evidence which, when combined with other evidence, shows such congressional intent.

Additional evidence of congressional intent was provided by the passage of the 1978 Amendments, in which Congress made provision for attorney fees for successful litigants. The new section of the act, § 505, 29 U.S.C. § 794a, provides in relevant part:

"In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

On its face, this enactment presumes the existence of a private cause of action. Congressional intent underlying the provision was clarified in the Senate report:

"The committee believes that the rights extended to handicapped individuals under Title V, that is, Federal government employment, physical accessibility in public buildings, *employment under federal contracts*, and nondiscrimination under federal grants—are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance and *the availability of attorney's fees should assist in vindicating private rights of action in the case of section 502 and 503 cases*, as well as those arising under sections 501 and 504."

S.Rep.No.95–890, 95th Cong. 2nd Sess. (1978) (emphasis supplied).

Senator Cranston, the author of the attorney's fees provision and manager of all the previous legislation, listed the sections of the Act covered by the attorney's fees provision, including "employment under federal contracts," and added:

"Private enforcement of these Title V rights is an important and necessary aspect of assuring that these rights are vindicated and enforcement is uniform. The availability of attorney's fees should assist substantially in this respect."

124 Cong.Rec. 15590 (Sept. 20, 1978).

Senators Cranston and Bayh exchanged remarks on the floor which indicated that they believed Title V of the Act authorized private rights of action, just as Title VI and Title IX did. Senator Bayh concluded:

"I thank the distinguished Senator from California for taking time to make clear the *continuing intention* of Congress that private actions be allowed under Titles VI and VII of the Civil Rights Act of

1964, Title IX of the Education Amendments of 1972 and Title V of the Rehabilitation Act of 1973."

124 Cong.Rec. 15593 (Sept. 20, 1978). (Emphasis supplied.)

Senator Stafford said on the Senate floor:

"Mr. President, the rights currently extended to the handicapped individual under Title V of the Rehabilitation Act of 1973—federal government employment, physical accessibility in public buildings, *employment under federal contracts,* and nondiscrimination under federal grants— are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance. Private enforcement of these Title V rights is an important and necessary aspect of assuring that these rights are vindicated, and the availability of attorney's fees should assist substantially in this respect."

124 Cong.Rec. 18999 (Oct. 14, 1978). (Emphasis supplied.)

None of these statements were ever questioned during consideration of the legislation. While the statements by Senator Stafford might be interpreted to mean that Congress had intended to create private rights of action in sections of Title V other than § 503(a), the Senate Report clearly refers to Section 503. In light of the Senate Report, it is likely that Senators Cranston, Bayh and Stafford were referring to Section 503.

Some courts have rejected the argument that the above legislative history evidences a congressional intent in favor of an implied cause of action. The majority in *Rogers v. Frito-Lay, Inc.,* 611 F.2d at 1082, said that while the 1978 congressional committee may have assumed that a private cause of action existed, "an assumption is not a law," and "a committee is not the Congress." It has also been said that the legislative history of the 1978 Amendments is too remote from the enactment of Section 503 to be useful. *Rogers v. Frito-Lay, Inc.,* 611 F.2d at 1082; *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d at 1243.

This Court disagrees because, in its view, the Supreme Court in *Cannon* has indicated that a legislative amendment permitting an attorney's fee award under an existing statute is relevant to the determination whether Congress intended to create a private cause of action under that statute. Such a conclusion is, of course, based on the common sense understanding that the usual basis for an attorney fee award results from the performance of legal services in a successful case in court.

When *Cannon* was at the Circuit Court level, the Seventh Circuit held that no implied cause of action existed under Title IX. After granting a petition for rehearing to determine whether including Title IX in the provisions of the Civil Rights Attorney's Fees Award Act of 1976 required a change in its decision, the Seventh Circuit reaffirmed the original holding that no implied private remedy existed, stating:

"As we read the legislative history of the Attorney's Fees Award Act, it provides no support for plaintiff's argument that the inclusion of Title IX within the Act was intended to provide a private right of action under Title IX. At best, the remarks to which plaintiff has referred us suggest only that some members of Congress may have assumed that private suits were authorized under all of the statutes included within the Act. But, even if the entire Congress shared the assumption that a private right of action was authorized by Title IX, none of the precedents on which plaintiff relies would be controlling, for they involved subsequent legislative history explicitly declarative of Congress's own intent in passing a given statute, rather than a mere assumption concerning a judicial construction that had been or might be placed on a statute after its enactment."

*Cannon v. University of Chicago,* 559 F.2d 1063, 1079 (7th Cir. 1976), *rev'd.,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

The Supreme Court not only reversed the Seventh Circuit but rejected the type of analysis embodied in the above excerpt.

"We find nothing objectionable in this conclusion, as far as it goes. The legislative history quoted in the opinion of the Court of Appeals makes clear that the supporters of the legislation did not intend it to amend Title IX to include an express cause of action where none existed before. Instead, they clearly only meant to provide attorney's fees in the event that that statute as it had always existed implicitly created a cause of action. . . .

"On the other hand, the language added to § 1988 by the 1976 amendment and the legislative history surrounding it does indicate that many 'members of Congress may have assumed that private suits were authorized under' Title IX, *id.*, at 1079, and, more important, that many members felt that private enforcement of Title IX was entirely consistent with, and even necessary to, the enforcement of Title IX and the other statutes listed in § 1988. In addition to reflecting this sentiment in the Senate Report on the 1976 Amendment . . . numerous legislators said as much on the floor of the two Houses. . . .

"*Although we cannot accord these remarks the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions concerning the scope and purpose* of Title IX and its place within the 'civil rights enforcement scheme' that successive Congresses have created over the past 110 years." (Emphasis supplied.)

*Cannon v. University of Chicago,* 441 U.S. at 686, 99 S.Ct. at 1952, n.7.

The *Cannon* court applied this reasoning in reaching its decision that an implied private cause of action existed under Title IX. *Cannon,* 441 U.S. at 705, 99 S.Ct. at 1961. This reasoning also is applicable in deciding the impact of the subsequent legislative expressions of intent concerning § 503 and the 1978 Amendment providing for attorney's fees. The Court is aware of the frequently repeated warning that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304,

313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960), quoted in *Consumer Products Safety Comm. v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980). It is to be remembered, however, that:

"[w]e cannot fail to note Chief Justice Marshall's dictum that 'where the mind labours to discover the design of the legislature, it seizes everything from which aid can be discovered.' *United States v. Fisher,* 2 Cranch, 358, 386, 2 L.Ed. 304 (1805). In consequence, while arguments predicated upon subsequent congressional actions must be weighed with extreme care, they should not be rejected out of hand as a source that a court may consider in the search for legislative intent."

*Andrus v. Shell Oil Co.,* 446 U.S. 657, 100 S.Ct. 1932, 1938, n.8, 64 L.Ed.2d 593 (1980).

After considering these admonitions and guidelines from the Supreme Court, especially those set forth in the analogous case *Cannon,* the Court finds that, on balance, there is sufficient evidence of legislative intent to create a private cause of action to satisfy the second *Cort* factor, at least to the degree necessary to proceed to an examination of the final two *Cort* factors. For as the Court previously noted, the final two factors are to be consulted only if the first two factors give indications of congressional intent to create the private remedy. Since there are indications of such intent, particularly in the legislative history surrounding the enactment of the attorney's fees provision in the 1978 Amendments, the Court will now turn to the third *Cort* factor.

"Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088. In *Cannon,* the Supreme Court noted that under the third *Cort* guideline:

"[a] private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court

is decidedly receptive to its implication under the statute."

*Cannon v. University of Chicago,* 441 U.S. at 703, 99 S.Ct. at 1961.

█ This Court believes that it is clear that implication of a private cause of action would not frustrate the purpose of the legislative scheme, but would actually help accomplish the statutory purpose.

In *Cannon,* the Court pointed out that the statutory remedy termination of federal financial support would be ineffective in accomplishing the purpose of protecting individuals from sex discrimination in cases of isolated violations. The Court noted that it would make little sense to impose on an individual or on HEW the burden of showing an institution's practices to be so discriminatory that a complete cut-off of federal funding was warranted, when all the individual needs and desires is relief as to the discrimination against her.

> "The award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute."

*Cannon v. University of Chicago,* 441 U.S. at 705, 706, 99 S.Ct. at 1962.

In this case, the purpose of the statute is to protect handicapped individuals from discrimination. Without a private judicial remedy, the only remedies available are withdrawing payments due on contracts, termination of contracts, and barring the violator from receiving further federal contracts. 41 C.F.R. § 60–741.28 (1980). As the remedies for Title IX violations were not effective by themselves, so too these remedies are not effective by themselves to accomplish the redress of discrimination in isolated cases. *Chaplin v. Consol. Edison Co. of N.Y., Inc.,* 482 F.Supp. at 1173. In a colloquial sense, using the governmental sanctions is, in many cases, like performing delicate surgery with an ax.

> "These rather severe procedures simply do not provide the kind of narrow, specific relief appropriate to remedy individual instances of discrimination."

*Hart v. County of Alameda,* 485 F.Supp. at 76.

It should be noted that the Department of Labor and its Office of Federal Contract Compliance (OFCCP), the agency charged with administering § 503, had taken the position that a private cause of action exists under § 503, that such a private cause of action would assist, not hinder, the Act's administrative enforcement scheme, and that exhaustion of administrative remedies should not be required in all cases. See *Chaplin v. Consol. Edison Co. of N.Y., Inc.,* 482 F.Supp. at 1172; *Rogers v. Frito-Lay, Inc.,* 611 F.2d at 1086. Recently, after the change in administration, the Department of Labor changed its position and now asserts that there is no private cause of action under § 503. BNA Daily Labor Report, Current Developments, July 28, 1981, at A–8 to A–9.

Taking judicial notice of the political vicissitudes that may be reflected in different administrations, the Court, while disagreeing with the last interpretation solely on a legal basis, believes no deference can be accorded to the administrative interpretation concept in this case as to this statute.

In light of the above, the Court believes that inferring a private judicial remedy is consistent with the underlying purpose of § 503.

█ The last *Cort* factor asks whether the action is one traditionally relegated to state law, in an area basically the concern of the States. As the Court noted in *Cannon,* prohibitions against invidious discrimination of any sort are a principal concern of the federal government. *Cannon v. University of Chicago,* 441 U.S. at 708, 99 S.Ct. at 1963.

█ After considering all the *Cort* factors, the Court concludes that the factors favor the implication of a private right of action under § 503 of the Rehabilitation Act.

Defendant argues that even if a private right to sue exists, plaintiffs are required to exhaust administrative remedies prior to bringing a private judicial action.

The Court in *Cannon*, 441 U.S. at 706, 707, 99 S.Ct. at 1962, 1963, n. 41, expressly rejected the argument that plaintiffs bringing suit under Title IX must pursue and exhaust administrative remedies first. The Court noted the inappropriate nature of the administrative remedies in many cases of discrimination. This reasoning is equally applicable to private suits under § 503. The Court holds that plaintiffs pursuing a private cause of action under § 503 need not have pursued administrative remedies beforehand.

The Court is aware of the recent opinions in this district by Judge Rogers, in *Moon v. Santa Fe Railroad Co.*, 22 FEP Cases, 1252 (D.Kan.1980); and by Judge Saffels in *Brown v. American Home Products Corp.*, Unpub. No. 81–2129 (D.Kan. filed Aug. 28, 1981), in which each of these learned colleagues concluded that no cause of action exists under § 503. While the judges of this district strive for uniformity, there are inevitably times in which judges reach different conclusions as to the law, and especially in split authority cases. This is one of those times, and this Court must respectfully disagree with the conclusion of his brother judges on this issue.

For the above reasons, the Court will not grant defendant's motion to dismiss on § 503 grounds.

## THE REHABILITATION ACT—SECTION 504

The Court need not undertake a detailed analysis of whether a private cause of action exists under Section 504 of the Rehabilitation Act because, in contrast to the judicial split concerning § 503, there is overwhelming judicial approval of an implied private right of action under § 504. *Leary v. Crapsey*, 566 F.2d 863 (2nd Cir. 1977); *Halderman v. Pennhurst State School & Hospital*, 612 F.2d 84 (3rd Cir. 1979); *Davis v. Southeastern Community College*, 574 F.2d 1158 (4th Cir. 1978), *rev'd. on other grounds*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980); *Lloyd v. Regional Transportation Authori-*

ty, 548 F.2d 1277 (7th Cir. 1977); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Cain v. Archdiocese of Kansas City, Kansas*, Unpub. No. 79–1554 (D.Kan., filed March 3, 1981).

The Court agrees with the position of the courts in the cases cited above, and finds that an implied private cause of action exists under § 504.

Defendant argues that exhaustion of administrative remedies is required prior to any such private action being brought. As noted previously, the Court in *Cannon* declined to require administrative exhaustion in private suits under Title IX. This Court believes the reasoning in *Cannon* is equally applicable in this case and agrees with Judge Saffels, of this district, that individuals bringing suit to enforce § 504 need not resort beforehand to administrative remedies. *Cain v. Archdiocese of Kansas City, Kansas*, supra.

The Court also agrees with Judge Saffels that in order to privately enforce Section 504 in employment discrimination cases a plaintiff must be a primary or intended beneficiary of the federal financial aid to the employer. *Cain v. Archdiocese of Kansas City, Kansas*, supra. This conclusion is based on the fact that the 1978 Amendments to the Rehabilitation Act provide that the remedies, proceedings and rights set forth in Title VI of the Civil Rights Act of 1964 shall be available to Section 504 litigants. While Section 601 of Title VI broadly prohibits acts of discrimination under any program or activity receiving federal financial assistance, Section 604 limits Section 601 by providing:

> "Nothing contained in this subchapter shall be considered to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer ... except where a primary objective of the federal financial assistance is to provide employment."

This provision has led numerous courts to hold that a judicial remedy is not available under § 504 against an institution receiving

federal funds unless a primary objective of the aid was to provide employment. *Tragesar v. Libbie Rehabilitation Center, Inc.,* 590 F.2d 87 (4th Cir. 1978), *cert. denied,* 422 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); *Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672 (8th Cir. 1980); *Ca'n v. Archdiocese of Kansas City, Kansas,* supra; *Sabol v. Board of Education, Willingboro,* 510 F.Supp. 892, 25 FEP Cases 548 (D.N.J.1981); *Guertin v. Hackermann,* 25 FEP Cases 207 (S.D.Tex.1980); See *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d at 1232 (plaintiff must be a primary or intended beneficiary of the federal financial aid to employer).

As a footnote to the question of what legal remedies should be available, and strictly as obiter dicta, this Court will hazard his thoughts on this area.

As a part of a federal judge's duties it is incumbent upon him to follow the existing precedents of law—often referred to as the doctrine of stare decisis. On the other hand, if the precedential law is divided, the Court is duty bound to follow that law which will best promote the administration of justice. Also, a trial judge is always ethically free to express his personal disagreement with theories or principles of law expounded by appellate courts. Thus, he may suggest, but not impose, a better theory or basis of decision. Changes in court-made law usually evolve slowly on either a logical basis or upon a gradual change in the mores of the populace. Such changes rarely make an abrupt turnabout except in the field of statutory law where the political process may dictate such a result.

As stated above, this Court is bound by the principles laid down by the Supreme Court in *Cort v. Ash,* in implying a private right of action where a federal statute does not so expressly provide. The weight of authority seems to suggest a presumption that no right of private suit exists. Apparently this is on the strict construction approach based on classical principles of statutory interpretation.

This Court feels very strongly that if the purpose of the statute is plain to provide a course of conduct or duty by someone against another, or to provide a right to someone against another, then the congressional purpose or intent having been expressed, a presumption should exist that Congress intended every possible legal implementation of its expressed purpose, including enforcement by private legal action. This Court would therefore invoke a principle of law that unless the statute expressly forbids enforcement by private action, such a right should be implied. Such a suggested principle of statutory construction, it seems to this Court, satisfies both logic and mores.

Even though the Court has ruled that implied private causes of action exist under both Sections 503 and 504 of the Rehabilitation Act, a possibility of granting summary judgment against plaintiffs on these claims remains. The Court will briefly recount the standards governing decisions concerning motions for summary judgment made pursuant to Rule 56 Federal Rules of Civil Procedure.

 A summary judgment motion is not a substitute for trial and should not be lightly granted. *Redhouse v. Quality Food Sales, Inc.,* 511 F.2d 230, 234 (10th Cir. 1975). The movant must demonstrate his right to prevail beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir. 1978). The Court must examine all the evidence in the light most favorable to the party opposing the motion. *Baum v. Gillman,* 648 F.2d 1292 (10th Cir., 1981). Summary judgment is not appropriate where an issue turns on the credibility of witnesses. *Madison v. Deseret Livestock Co.,* 574 F.2d at 1036.

 Where, as here, the motion for summary judgment is supported by affidavit and depositions, the opposing party may not rest on the mere allegations of the pleadings, but must respond with specific facts showing the existence of genuine issues for trial. *Stevens v. Barnard,* 512 F.2d 876 (10th Cir. 1975). "If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56,

F.R.Civ.P. The Tenth Circuit says that these words in Rule 56 "must mean that the motions for summary judgment *shall* be entered if the motions were properly made and set for hearing. And more importantly, the words must mean that judgment be entered when the moving party has met his burden." *Baum v. Gillman, supra.*

In light of these standards, it appears that summary judgment in favor of defendants may well be mandated on plaintiff's Rehabilitation Act claims. Defendant points out that Section 503 applies only to contracts or subcontracts "in excess of $2,500 entered into by any federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States." 29 U.S.C. § 793(a). Defendant has submitted an affidavit by N. L. Doligalski, who states that he is the executive vice-president of defendant company, and that defendant has had no government contracts or subcontracts since 1975 or earlier.

While plaintiff is correct in pointing out that it is a question of fact as to whether defendant is a government contractor, plaintiffs have failed to follow the strictures of Rule 56(e). They have failed to set forth, by affidavits or otherwise, specific facts showing the existence of a genuine issue on this point for trial. Also, Local Rule 15(c) states that the movant for summary judgment must submit a numbered list of the material facts as to which he contends no genuine issue exists. The Rule then provides that:

> "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

In plaintiffs' response to the motion for summary judgment, plaintiffs failed to controvert the statement, supported by affidavit, that defendant is not a government contractor or subcontractor. Plaintiffs merely responded that "the affidavit of N. L. Doligalski speaks for itself and has not be (sic) subjected to cross-examination." This response fails to satisfy the requirements of Local Rule 15(c) for placing a fact in issue and also fails to meet the requirements of Rule 56, F.R.Civ.P. The Court is thus inclined at this time to grant defendant's motion for summary judgment as to the § 503 claim.

A similar situation exists for the § 504 claim. As the Court previously noted, Section 504 applies only when the employer receives federal financial assistance which has the primary objective of providing employment. Defendant has stated that it does not operate any program or activity receiving federal financial assistance, and supports that statement with the Doligalski affidavit.

Plaintiffs once again fail to specifically controvert this, fail to offer any affidavits, and fail to point to anything else of record that would put this fact in issue. The Court is thus inclined to grant defendants' summary judgment motion on the § 504 claim.

As to the § 1981 claims, the Court thinks it is clear that genuine issues of material fact exist as to the reasons for the firing of William Davis. Defendant relies on the deposition of William Davis in support of their motion, but the Court reads the deposition as providing evidence that racial animus may have been the reason for the firing. Plaintiff William Davis need not prove his case at this stage, as it is for the defendant to show that no genuine issue of material fact remains. Defendant's motion for summary judgment on the § 1981 claim of William Davis should therefore be overruled. Likewise, defendant has failed to show that no genuine issues of material fact remain as to the § 1981 claim of Judith Davis, and summary judgment as to that claim appears likewise to be inappropriate. The Court would note that the motion for summary judgment on the § 1981 claims is not supported by affidavits and the Court is thus not precluded from considering the pleadings in determining whether genuine issues of material fact remain. Rule 56(c), F.R.Civ.P.

Defendant has moved to dismiss plaintiffs' claims based on the Kansas Act Against Discrimination, K.S.A. § 44–1001, et seq. (often referred to as the Kansas Civil Rights Act). Defendant argues that there should be no exercise of pendent jurisdiction over the state-based claim.

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court announced a two-step test for deciding whether pendent jurisdiction is to be exercised. This Court must first determine whether it has the power to entertain the pendent claim and then must go further and decide if it *should* exercise pendent jurisdiction. In deciding whether to exercise pendent jurisdiction, the Court should consider judicial economy, convenience and fairness to the parties, the need to avoid potential jury confusion, and the potential of avoiding needless decisions of state law. After considering these factors, Judge Rogers, in *Brown v. Frito-Lay, Inc.*, 15 FEP Cases 1055 (D.Kan.1976), declined to exercise pendent jurisdiction over the Kansas Civil Rights claim because: (1) it was uncertain whether the Kansas Civil Rights Act created a private judicial cause of action; (2) the scope of remedies under the Act was essentially uncharted; and (3) the exercise of pendent jurisdiction would require resolution of many substantive issues concerning the Kansas Act not yet considered in state courts.

While it is now clear that there is a private cause of action under the Kansas Civil Rights Act apart from administrative remedies, *Van Scoyk v. Saint Mary's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978), this Court recently found that the other reasons cited by Judge Rogers remain valid today. *Wilkins v. Baldwin Piano and Organ Company*, Unpub. No. 80–1243 (D.Kan., filed Nov. 5, 1980). The Court continues to believe that pendent jurisdiction should not be exercised over claims under the Kansas Civil Rights Act and thus orders that plaintiffs' claim based on that Act be dismissed.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment insofar as it applies to plaintiff's § 1981 claims is hereby overruled.

IT IS FURTHER ORDERED that defendant's motion to dismiss the plaintiffs' claim based on the Kansas Act Against Discrimination is hereby sustained.

IT IS FURTHER ORDERED that defendant's motion for summary judgment as to plaintiffs' Rehabilitation Act claims, in light of *Dolese v. United States*, 541 F.2d 853 (10th Cir. 1976), shall be set for hearing in the near future.