Bernice ORTEGA, Plaintiff,

v.

RHONE–POULENC OF WYOMING, L.P., and Richi Kalivas, Defendants.

No. 92–CV–0013–B.

United States District Court, D. Wyoming.

Jan. 22, 1994.

Bruce S. Asay, Cheyenne, WY, for plaintiff.

Brent R. Kunz, Cheyenne, WY, for defendant Rhone–Poulenc.

Peter K. Michael, Cheyenne, WY, for defendant Kalivas.

## ORDER GRANTING DEFENDANT RHONE–POULENC'S MOTION TO DISMISS

BRIMMER, District Judge.

The above-entitled matter having come before the Court on Defendant Rhone–Poulenc's Motion to Dismiss, and the Court, having read the materials on file both in support of and in opposition thereto, having heard oral argument from the parties, and being fully advised in the premises, hereby FINDS and ORDERS as follows:

### Background

Plaintiff Bernice Ortega was employed as a custodian by defendant Rhone–Poulenc. She worked for Rhone–Poulenc for many years, during which time she was supervised by defendant Richi Kalivas. Upon the termination of Ortega's employment relationship with Rhone–Poulenc, she filed the present suit alleging breach of contract,[1] age discrimination and a violation of § 503 of the federal Rehabilitation Act,[2] 29 U.S.C. § 793 (1988) ("the Act"), against Rhone–Poulenc. Her sole cause of action against Kalivas was for intentional infliction of emotional distress.

During the final pretrial conference in this matter, counsel for Rhone–Poulenc advised the Court that he had filed a motion to dismiss the plaintiff's cause of action under § 503 of the Act, even though the deadline for filing motions had passed.[3] The basis for the motion was that counsel did not believe that the plaintiff could maintain a cause of action under that statute. He relied on the Tenth Circuit's decision in *Hodges v. Atchison, Topeka & Santa Fe Railway,* 728 F.2d 414, 416 (10th Cir.), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984), which expressly held that § 503 of the Act, relied on by the plaintiff, did not provide an implied right of action.

Although the motion was filed after the deadline, it was, as a practical matter, necessary for the Court to hear the merits of the motion. Plaintiff subsequently filed an opposition to the motion, and the case is therefore ripe for resolution.

### Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests only the legal sufficiency of the complaint, and the trial court determines whether the complaint is sufficient as a matter of law. *See Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). In order to dismiss a complaint pursuant to Rule 12(b)(6), the Court must, after viewing the complaint in the posture most favorable to the plaintiff, reach the legal conclusion that the plaintiff would not be entitled to relief as a matter of law. *See Conley v. Gibson,* 355 U.S. 41, 46–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

### Discussion

As noted, Rhone–Poulenc's motion to dismiss the plaintiff's claim under § 503 of the

---

1. The plaintiff was not formally fired from her job; the basis for her breach of contract claim is that she was constructively discharged.

2. Sections 503 and 504 of the Rehabilitation Act only apply to entities that have a contract with the federal government. Section 503 "requires that certain employers who contract with the federal government take affirmative action to employ and promote qualified handicapped individuals." *Fisher v. City of Tucson,* 663 F.2d 861, 864 (9th Cir.1981). In contrast, § 504 "specifically prohibits discrimination against handicapped individuals in any program or activity receiving federal financial assistance." *Id.*

The plaintiff's claim in this case is brought pursuant to § 503 of the Act and not § 504. Although not entirely clear, it appears that the plaintiff's alleged handicap is based on the fact that she suffers from depression. The Court will assume for purposes of this motion, without deciding, that this would in fact qualify as a handicap under the Act.

3. Rhone–Poulenc acknowledges that because it possesses a federal mining lease, it is subject to the terms and conditions of the Rehabilitation Act.

Act is based on the argument that the statute does not confer a substantive private right of action. The defendant relies on the Tenth Circuit's decision in *Hodges,* where Judge Seth concluded that "[w]e find no implied right or remedy in the statute." *Hodges,* 728 F.2d at 416.

The plaintiff argues that the reasoning used in *Hodges* has been altered by the later decision[4] of the United States Supreme Court in *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). In addition, she urges this Court to adopt the reasoning of Judge Goldberg, the dissenting judge in *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074, 1085–1109 (5th Cir. 1980).[5] The plaintiff argues, in essence, that the analysis used in cases decided since *Hodges* have altered the legal inquiry such that the result in *Hodges* is no longer consonant with existing law. As an example of the proper analysis, she relies on the *Rogers* dissent.

In order to address this argument properly, it will be necessary to review the law governing implied rights of action, beginning with the existing precedent of the Supreme Court.

### 1. *Supreme Court Precedent*

In the landmark decision of *J.I. Case v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Supreme Court concluded that § 27 of the Securities Exchange Act of 1934 created a private implied right of action for monetary damages. *Id.* at 432–34, 84 S.Ct. at 1559–61. Justice Clark wrote for the Court that "[w]e, therefore, believe that under the circumstances here it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Id.* at 433, 84 S.Ct. at 1560. Following this decision, lower courts routinely implied causes of action under federal statutes.

4. *Hodges* was decided on February 13, 1984. *Darrone* was decided on February 28, 1984, fifteen days later.

5. *Rogers* involved the precise question at issue here, which is whether § 503 of the Rehabilitation Act provides a private right of action.

The Supreme Court's next major case on this issue was *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Although the *Cort* Court concluded that the statute at issue in the case, a criminal statute prohibiting corporations from making contributions or expenditures in connection with a presidential election, did not create a private civil cause of action, the reasoning used by the Court effectively expanded the ability of the federal courts to imply private rights of action. *See Cannon v. University of Chicago,* 441 U.S. 677, 741, 99 S.Ct. 1946, 1980, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting) (noting that at least twenty lower court decisions had implied causes of action since *Cort* ).

In his opinion for the unanimous Court in *Cort,* Justice Brennan wrote that the lower courts should consider four factors in deciding whether a private cause of action was implicit in a statute that concededly did not expressly provide for such a remedy. In the oft-cited passage, he wrote:

> several factors are relevant. First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted ...—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (internal citations omitted) (emphasis in original). *Cort's* four-part inquiry thus became the benchmark to be applied in determining whether a private right of action exists.

In that case, the two other members of the panel of the Fifth Circuit disagreed with Judge Goldberg, and concluded that "we have concluded that Congress has not authorized a private cause of action [under this statute]." *Rogers,* 611 F.2d at 1078.

*Cannon* was the Supreme Court's first case after *Cort* that applied its four-part test. The Court in *Cannon* held that there was an implied right of action under § 901 of Title IX of the Education Amendments of 1972. *Id.* 441 U.S. at 717, 99 S.Ct. at 1968. Then–Justice Rehnquist's concurrence in *Cannon* pointed out that in his view, "[t]he question of the existence of a private right of action is basically one of statutory construction." *Id.* (Rehnquist, J., concurring).

Justice Powell dissented. His powerful dissent in *Cannon* is worth noting because it has had a dramatic influence on this area of the law, as evidenced by subsequent cases. Justice Powell began by drawing a distinction between whether a federal court had *power*, in the constitutional sense, to imply a private right of action and if so, what criteria should govern the exercise of that power in a given case. *Id.* at 730–31, 99 S.Ct. at 1974–75 (Powell, J., dissenting). He then noted that *Borak* and *Cort* had simply assumed that the answer to the first question was yes without ever addressing that issue. To him, while those two cases represented a plausible answer to the second question, they wrongly assumed the answer to the first, namely, that the federal courts did have the constitutional authority to imply a private right of action when Congress had not provided one. In his view, the concept of implying a private right of action "cannot be squared with the doctrine of the separation of powers." *Id.* He stated that:

> [w]hen Congress chooses not to provide a private civil remedy, federal courts should not assume the legislative role of creating such a remedy and thereby enlarge their jurisdiction.... The 'four factor' analysis of [*Cort*] is an open invitation to federal courts to legislate causes of action not authorized by Congress. It is an analysis not faithful to constitutional principles and

should be rejected. Absent the most compelling evidence of affirmative congressional intent, a federal court should not infer a private cause of action.

*Id.* at 730–31, 99 S.Ct. at 1975. He noted that by implying a private right of action into a statute that did not expressly provide for such a remedy, the Court was "encourag[ing] Congress to shirk its constitutional obligation and leave the issue to the courts to decide." [6] *Id.* at 743, 99 S.Ct. at 1981–82. Moreover, his separation of powers concerns were grounded in the fact that "the Court's implication doctrine encourages, as a corollary to the political default by Congress, an increase in the governmental power exercised by the federal judiciary.... By creating a private action, a court of limited jurisdiction necessarily extends its authority to embrace a dispute Congress has not assigned it to resolve." *Id.* at 743–46, 99 S.Ct. at 1981–83.

In *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), which was decided just over one month after *Cannon,* it became apparent that the Court had adopted the positions of both Justice Rehnquist and Justice Powell, and that *Cort*'s four-factor test had all but been abandoned. The *Redington* Court held that the primary inquiry into whether an implied cause of action exists under a statute was to be based on congressional intent. Writing for the Court, Justice Rehnquist noted that *Cort* did not decide that each of the four factors was entitled to equal weight in the balance, and that the "central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id.* 442 U.S. at 575, 99 S.Ct. at 2489. *Redington*'s refinement of *Cort* was followed in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).[7]

**6.** To be sure, Justice Powell did acknowledge that it might be necessary to imply a right of action in a case where the statutory scheme enacted by Congress would otherwise be unenforceable. *Id.* at 734, 99 S.Ct. at 1976–77.

That extreme situation was not presented in *Cannon,* nor is it presented in this case. It is clear that the failure to imply a right of action in this case would not leave the statute unenforceable. In addition, Judge Seth was apparently

aware of this point as he noted in *Hodges* that "the comprehensive remedial scheme provided in the statute dictates against implying another remedy." *Hodges,* 728 F.2d at 416.

**7.** Other cases following *Redington*'s analysis include *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) and *Herman & MacLean v. Huddle-*

Then, in *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), seven members of the Court noted that the Parental Kidnapping and Prevention Act of 1980, 28 U.S.C. § 1738A (1988), did not create a private cause of action. The most provocative portion of that opinion, however, was Justice Scalia's concurrence, which was joined in part by Justice O'Connor. Echoing Justice Powell's dissent in *Cannon*, Justice Scalia's concurrence made three points. First, he indicated his dissatisfaction with the line of cases mandating an inquiry into congressional intent. He stated that he was "at a loss to imagine what congressional intent to create a private right of action might mean, if it does not mean that Congress had in mind the creation of a private right of action." *Id.* 484 U.S. at 188, 108 S.Ct. at 521 (Scalia, J., concurring, joined by O'Connor, J.). Second, he criticized the Court's reliance on *Cort*'s four-part test, stating that in his view, "[i]t could not be plainer that we effectively overruled the *Cort v. Ash* analysis in *Touche Ross* [ ] and *Transamerica* [ ], converting one of its four factors (congressional intent) into *the determinative factor,* with the other three merely indicative of its presence or absence." *Id.* (emphasis in original). The most intriguing portion of his concurrence, however, was the third point. Justice Scalia, speaking only for himself, advocated that the Court abandon its entire jurisprudence of implying causes of action in favor of the "categorical position that federal private rights of action will not be implied." *Id.* at 191, 108 S.Ct. at 522 (Scalia, J., concurring).

Although the present state of the law has not adopted Justice Scalia's view that the federal courts "should get out of the business of implied rights of action altogether," *id.* at 192, 108 S.Ct. at 523, it is clear that the focus is on congressional intent, with the other *Cort* factors being merely indicative of its presence or absence. *See, e.g., Franklin v. Gwinnett County Public Schools*, 503 U.S. ——, —— – ——, 112 S.Ct. 1028, 1035–36, 117 L.Ed.2d 208 (1992); *Suter v. Artist M,* 503 U.S. ——, ——, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992).

*ston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548

### 2. *Lower Court Rulings*

Having set out the analytical framework for determining whether an implied right of action exists under a statute, the Court must determine how that legal framework applies in this case.

As noted, the defendant relies on the authoritative decision of the Tenth Circuit in *Hodges* for the proposition that there is no implied private right of action under this statute. The plaintiff concedes that *Hodges* is on point, but argues that the *Darrone* decision, as well as the dissenting opinion in *Rogers,* change the analysis beyond that contained in *Hodges* and lead to a different conclusion than that reached in *Hodges.* The plaintiff contends that a proper application of the reasoning of those cases will lead this Court to the conclusion that *Hodges* was wrongly decided.

As an initial matter, the Court notes that not only is *Darrone* distinguishable because it involves § 504 of the Act, whereas this case involves § 503, it is also simply inapposite to the issue presented in this case. The *Darrone* Court was not faced with the issue of whether § 504 of the Act contained an implied right of action. Justice Powell's statement of the issue presented by that case makes this point clear: "[t]his case requires us to *clarify the scope of the private right of action to enforce § 504 of the Rehabilitation Act* ..." *Darrone,* 465 U.S. at 626, 104 S.Ct. at 1250 (emphasis added). In other words, the Court was not deciding *whether* to imply a right of action under that statute; that decision had apparently already been made prior to *Darrone.* The question in that case involved the much narrower and analytically distinct issue of whether an employer may be sued for discrimination under § 504 when that employer receives federal financial assistance the "primary objective" of which is "to provide employment." *Id.* at 628, 104 S.Ct. at 1251. The Supreme Court granted certiorari to resolve a conflict in the circuits over whether this "primary objective" limitation was proper under § 504. The case, in short, has absolutely nothing to do with implying rights of action under *Cort* and its progeny; it deals with an entirely different issue.

(1983).

Thus, plaintiff's reliance on this decision is simply misplaced.

Moreover, plaintiff's insistence that this Court follow the reasoning of Judge Goldberg in *Rogers* is somewhat perplexing given that his dissent does not quarrel with the legal standard to be applied in determining whether to imply a private right of action. *Compare Rogers*, 611 F.2d at 1078 (majority relying on *Cort, Cannon, Touche Ross* and *Transamerica*) *with id.* at 1086 (dissenting judge relying on the same four cases). The point at which the majority and the dissent in *Rogers* part company is in how they would apply these cases to the facts of that particular case. The majority simply concludes that analysis of these factors leads to one conclusion while the dissent argues that a different conclusion should be reached. Nonetheless, the legal standard applied by all three judges is the same.

Finally, and most significantly, Judge Seth's opinion in *Hodges* clearly applied the four-part *Cort* test that plaintiff is urging this Court to follow. Although the *Cort* test was refined by the Supreme Court's subsequent cases, the four inquiries set forth in that case, all of which are discussed in *Hodges*, are still relevant. In *Hodges*, the Tenth Circuit applied those four factors and concluded their application counseled against implying a right of action. *See Hodges*, 728 F.2d at 416.

It is also worth noting that the *Hodges* decision is by no means an anomalous or aberrational decision. Every circuit that has addressed this issue, which includes the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Circuits, have all concluded that there is no private right of action under § 503 of the Act. *See, e.g., D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1480–81 (7th Cir.1985); *Hodges*, 728 F.2d at 416 (Tenth Circuit); *Painter v. Horne Bros., Inc.*, 710 F.2d 143, 144 (4th

Cir.1983) (*per curiam* ); *Beam v. Sun Shipbuilding & Dry Dock Co.*, 679 F.2d 1077, 1078 (3d Cir.1982) (*per curiam* ); *Fisher*, 663 F.2d at 864 (Ninth Circuit); *Davis v. United Air Lines, Inc.*, 662 F.2d 120, 12–26 (2d Cir.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982); *Simon v. County of St. Louis*, 656 F.2d 316, 318–19 (8th Cir.1981), *cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Brown v. Sibley*, 650 F.2d 760, 763–65 (5th Cir.1981); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1237–38 (7th Cir.1980); *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 135 (6th Cir. 1979); *Rogers*, 611 F.2d at 1078 (Fifth Circuit); *see also Healy v. Bergman*, 609 F.Supp. 1448, 1451–55 (D.Mass.1985) (within the First Circuit).[8] This Court is of the opinion that the analyses set forth in these cases, especially *Fisher*, more than amply explain why there is no right of action under this statute.

### 3. *Conclusion*

It is difficult to conceptualize how a court could conclude that Congress clearly "intended" to create a private right of action when the statute does not contain one. Attempting to decipher and interpret the legislative history in order to divine some overall "legislative intent" is a task of Herculean proportions. If Congress' true "intent" was to provide a private cause of action, then that intent should be reflected in the constitutionally prescribed method: *the statute itself* should state that a private individual may sue under the statute.

This statement should not, however, be taken to mean that the legislative history of a statute is entirely irrelevant. As Judge Easterbrook so insightfully noted:

judges may learn from the legislative history even when the text is 'clear'. Clarity depends on context, which legislative history may illuminate. The process is objective; the search is not for the contents of

---

8. Although there are a handful of district court cases that have found an implied right of action under this statute, most, if not all, of those courts are located in circuits that have subsequently rejected the argument that an implied right of action exists under § 503. *See, e.g., Davis v. Modine Mfg. Co.*, 526 F.Supp. 943, 947–55 (D.Kan.1981) (effectively overruled by *Hodges* );

*Hart v. Alameda County*, 485 F.Supp. 66, 73–76 (N.D.Cal.1979) (effectively overruled by *Fisher* ); *Chaplin v. Consolidated Edison Co. of New York, Inc.*, 482 F.Supp. 1165, 167–73 (S.D.N.Y.1980) (effectively overruled by *United Air Lines* ). As a result, these cases would have lost their precedential value on this point.

the authors' heads but for the rules of language they used.

Quite different is the claim that legislative intent is *the* basis of interpretation, *that the text of the law is simply evidence of the real rule.... Statutes are law, not evidence of law....* The Constitution establishes a complex of procedures, including presidential approval (or support by two-thirds of each house). It would demean the constitutionally prescribed method of legislating to suppose that its elaborate apparatus for deliberation on, amending, and approving a text is just a way to create some *evidence* about the law, while the *real* source of legal rules is the mental processes of legislators. We know from *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) that the express disapproval of one house of Congress cannot change the law, largely because it removes the President from the process; it would therefore be surprising if 'intents' subject to neither vote nor veto could be sources of law.

*In re Sinclair,* 870 F.2d 1340, 1342–44 (7th Cir.1989) (italicized emphasis in original; underlined emphasis added).

The notion that a court can discern, from the sparse and self-serving statements of individual members of the legislature, some overall "congressional intent," that this intent can be attributed to the legislative body as a whole, and that this intent can trump or amend the plain text of a particular statute, is at least questionable, and at most unconstitutional.

Even if one is fortunate enough to discern the "legislative intent" of a particular statute, the notion that the mental thought process of an individual legislator can somehow be elevated into a rule of *law,* without being subjected to the bicameralism and presentment requirements set forth in the Constitution,[9] is nothing short of an exercise in judicial lawmaking and a clear violation of the separation of powers doctrine. *See Cannon,* 441 U.S. at 730–46, 99 S.Ct. at 1974–83 (Powell, J., dissenting).

9. *See* U.S. CONST. art. I, § 7.

Nonetheless, the Supreme Court of the United States has held that in certain cases, if there is "compelling evidence" of "congressional intent" that clearly demonstrates that Congress intended that there be a private right of action, then this Court would be bound to so find. For reasons stated above, however, this Court is of the opinion that the legislative history does not clearly indicate that Congress intended that there be a private right of action under § 503 of the Rehabilitation Act. Therefore, the motion to dismiss for failure to state a claim is warranted.

**THEREFORE,** it is

**ORDERED** that Defendant Rhone–Poulenc's Motion to Dismiss the Rehabilitation Act claim be, and the same hereby is, **GRANTED.**