John A. HEALY, Plaintiff,

v.

Ellen Shong BERGMAN, Director, Office of the Federal Contract Compliance Programs and Interstate Uniform Service, Defendants.

Civ. A. No. 83–0219–F.

United States District Court, D. Massachusetts.

May 28, 1985.

Stewart T. Graham, Jr., Springfield, Mass., for plaintiff.

Salvatore J. Scibelli, Springfield, Mass., for Interstate Uniform.

C. Brian McDonald, Asst. U.S. Atty., Springfield, Mass., for Shong.

Diane A. Heim, U.S. Dept. of Labor, Washington, D.C., for Bergman.

## MEMORANDUM

FREEDMAN, District Judge.

The plaintiff, John A. Healy, brings this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 706, seeking declaratory relief from a decision of the defendant, director of the Office of Federal Contract Compliance Program ("OFCCP") denying the plaintiff's claim of employment discrimination because of handicap. He also seeks relief against defendant Interstate Uniform Services ("I.U.S.") alleging unlawful discrimination.

Defendant I.U.S. has moved to dismiss the complaint for failure to state a claim,

Fed.R.Civ.P. 12(b)(6), arguing that Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 ("the Act"), does not provide for a private cause of action, and such a private right should not be inferred. Federal defendant Bergman has moved to dismiss, or in the alternative, for summary judgment and states as grounds that the plaintiff has failed to exhaust his administrative remedies and that the defendant's action was not arbitrary, capricious or contrary to law. The plaintiff has also filed a cross-motion for summary judgment.

Briefly stated, the facts of the case are as follows: In 1979 plaintiff was hired as a fireman and maintenance worker by the defendant I.U.S., a government contractor subject to Section 503 of the Act, *see infra* n. 2., with the knowledge that he was an alcoholic. He had a good work record with the defendant until January 8, 1980, when he voluntarily admitted himself to Baystate Medical Center's detoxification facility in Springfield. He remained there until January 30, 1980 when he returned to work for I.U.S.

On February 25, 1980, the plaintiff notified defendant I.U.S. that he had to enter an alcohol rehabilitation center for sixty days. I.U.S. told the plaintiff that it did not approve of his absence from work in January for hospitalization and that if he admitted himself to a hospital again for alcoholism he would be terminated.

The plaintiff entered the alcohol rehabilitation center on February 26, 1980. His employment with I.U.S. was terminated effective February 22, 1980. While in the alcohol rehabilitation center and after-

wards, the plaintiff saw classified advertisements for his former position. He applied for them and was refused employment.

On August 13, 1980, the plaintiff filed a complaint alleging employment discrimination with the Regional Office of defendant OFCCP of the United States Labor Department pursuant to 29 U.S.C. § 793. On April 12, 1982, the Regional Office issued its notification of results of investigation and found, *inter alia*, that the plaintiff was a handicapped individual and that his employer, I.U.S., unlawfully discriminated against him.[1]

On November 30, 1982, the Regional Office of OFCCP, *sua sponte*, issued a Reissuance of Notification of Results of Investigation in which it denied the plaintiff's claim and referred to "a recent ruling indicating that alcoholics who are receiving treatment for alcoholism are not considered to be qualified handicapped individuals under Section 503 of the Rehabilitation Act of 1973."

On December 12, 1982, the plaintiff applied to the Director of the National Office of the defendant OFCCP for reconsideration. On April 18, 1982, defendant Bergman issued a final decision upholding the Regional Office's denial of plaintiff's claim. Defendant Bergman's notification stated in part that "alcoholics, *per se*, are not considered handicapped if alcohol abuse is current and prevents the individual from performing his/her job. Such was the case here." Following this final agency decision, the plaintiff brought this action on May 23, 1983.

---

1. The Regional Office of the OFCCP made the following pertinent findings:

    2. John A. Healy is a handicapped individual within the meaning of Section 503 of the Rehabilitation Act of 1973, as amended and the regulations at 41 C.F.R. Chapter 60 as appropriate.

    5. Our investigation indicates that the complainant is a member of a protected class under Section 503 of the Rehabilitation Act of 1973. The contractor was aware of the complainant's problem with alcohol when he was hired. The complainant had a good work

record from the date of hiring in June 1979 until January 8, 1980 when he went to the detoxification and rehabilitation center. Upon his discharge from the center on January 30, 1980, he was referred for follow-up to a local clinic. He returned to work and performed satisfactorily. On February 25, 1980, he told his supervisor that he had to go back to the hospital for sixty days.

    7. The actions described in ¶ 5 above violated the contractor's obligation under the Regulations....

On May 1, 1985, a hearing was held at which time oral arguments were presented by counsel. Defendant Bergman withdrew her objection to the failure to exhaust administrative remedies on the issue of I.U.S.' failure to rehire the plaintiff and urged the Court to remand that issue to the federal agency for investigation and findings. Because neither party has presented a complete administrative record, the Court is not in a position to decide the issue. Therefore, a remand to OFCCP for expeditious action is appropriate.

There remain two principal issues:

(1) Should a private cause of action be implied from Section 503 of the Act?

(2) Was the administrative agency's denial of plaintiff's claim of discrimination because of handicap correct?

*A. Implying Private Cause of Action*

Section 503 of the Act [2] is silent as to whether an individual who believes he has been the subject of discrimination because of his handicap is entitled to maintain a private cause of action against his employer. Of the eight Circuit Courts of Appeals

to have considered the question, all have rejected private rights of action.[3] Nevertheless, the plaintiff urges this Court to "analyze the merits of the controversy afresh," in the absence of a mandatory authority in the First Circuit to the contrary.[4] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 5.

An inquiry into whether a statute implicitly authorizes a private cause of action must focus on Congressional intent, *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981), at the time the statute was enacted. *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982). In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court announced a four-part test to determine whether a private cause of action should be implied. The Court held:

In determining whether a private remedy is implicit in a statute not expressly providing one, several facts are relevant.

---

2. Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, provides, *inter alia*:

(a) Amount of contracts or subcontracts; provision for employment and advancement of qualified handicapped individuals; regulations. Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 7(7).... The President shall implement the provisions of this section by promulgating regulations within ninety days after the date of enactment of this section.

(b) Administrative enforcement; complaints; investigations; departmental action. If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate

such complaint and take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

3. *Davis v. United Air Lines*, 662 F.2d 120 (2d Cir.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982); *Beam v. Sun Shipbuilding & Dry Dock Co.*, 679 F.2d 1077 (3rd Cir.1982); *Painter v. Horne Bros. Inc.*, 710 F.2d 143 (4th Cir.1983) (per curiam); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980); *Hoopes v. Equifax, Inc.*, 611 F.2d 134 (6th Cir.1979); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226 (7th Cir.1980); *Simon v. St. Louis County*, 656 F.2d 316 (8th Cir.1981), *cert. denied*, 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Fisher v. Tucson*, 663 F.2d 861 (9th Cir. 1981).

4. While the Court of Appeals for the First Circuit has not had occasion to provide binding authority for this question, a Massachusetts district court has followed the overwhelming majority view and declined to imply a private cause of action under Section 503. *Myers v. New England Tel & Tel Co.*, C.A. No. 82–0871–T, slip op. (D.Mass. September 27, 1983).

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2087 (citations omitted). Subsequently, however, the Supreme Court appears to be moving away from a rigid application of the four-part test of *Cort* to a more generalized focus on Congressional intent. *See, e.g., Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Touche Ross v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). Nevertheless, *Cort* still remains a useful starting point and analytical framework to examine whether Congress intended to authorize a private cause of action under Section 503 of the Act.

In applying the first of the three *Cort* factors—whether Congress intended to benefit a special class of which the plaintiff is a member, the circuit courts have reached conflicting results. In *Fisher,* 663 F.2d at 863–64, the Ninth Circuit found that Section 503 "was clearly intended to benefit handicapped persons." However, in the other circuit cases in which full opinions were issued, *Davis v. United Air Lines,* 662 F.2d at 123; *Rogers v. Frito-*

*Lay,* 611 F.2d at 1078–80; *Hoopes v. Equifax, Inc.,* 611 F.2d at 134, the courts have found that the language of Section 503 did not manifest an intent on the part of Congress to invest handicapped individuals, as a class, with federal rights.

In concluding that Section 503 does not represent Congressional intent to benefit handicapped persons, *Hoopes, Rogers* and *Davis* focus on the distinction between "duty-creating" and "right-creating" language of the statute. In *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court in finding that Title IX of the Education Amendments of 1972 implicitly authorized a private cause of action, stated that:

Not surprisingly, the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action.... Put somewhat differently, because the right to be free of discrimination is a "personal one" ... a statute conferring such a right will almost have to be phrased in terms of the persons benefited.... Conversely, the Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large....

*Id.* at 690–692 n. 13, 99 S.Ct. at 1954 n. 13 (citations omitted).

The above-cited authorities reached their conclusion that the language of Section 503 was "duty-creating" rather than "right-creating" by contrasting it with the language of Section 901 of Title IX [5] from which the *Cannon* Court implied a cause of action as well as the language of Section 504 [6] of the Rehabilitation Act which has

---

5. In pertinent part, Section 901 of Title IX, 20 U.S.C. § 1681, provides:

(a) [N]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving federal assistance....

6. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides, *inter alia:*

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

also been interpreted widely to imply a private cause of action. *See, e.g., Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir. 1977); *Lloyd v. Illinois Regional Transportation Authority,* 548 F.2d 1277 (7th Cir.1977); *Cruz v. Collazo,* 84 F.R.D. 307 (D.P.R.1979). *See also* Annot., 44 ALR Fed. 148, 170 (1979). *Cf. Campbell v. Kruse,* 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977). I agree with the assessment in *Rogers,* that the language of Section 503 is not cast in the same mold, 611 F.2d at 1080, as the statutes printed in the margin, and does not, therefore, create a federally enforceable civil right for handicapped individuals.

This conclusion is bolstered by the *Cannon* Court's statement that had Section 901 of Title IX been phrased in different language the Court probably would not have implied a private right of action:

> There would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices.

441 U.S. at 690–93, 99 S.Ct. at 1954–56.

As an example of statutory language which would not give rise to an implied cause of action, the Court reproduced an alternative proposal which congress rejected that is very similar to Section 503.[7] Clearly, Section 503 does not confer federal rights on handicapped individuals but merely imposes certain obligations on government agencies. This is quite different from Section 504 of the Act which confers

directly upon qualified handicapped individuals a right to be free from discrimination by any recipient of federal funds. *See supra* n. 6.

The plaintiff would have this Court find right-creating language nevertheless on the basis of the inclusion in Section 503 of a provision authorizing an individual who believes that any government contractor has failed to comply with the provisions of the statute may file a complaint with the Department of Labor. 29 U.S.C. § 792(b). I concur with *Rogers* that "[t]he handicapped may have simply the right to petition those who administer federal contracts to perform their duty." 611 F.2d at 1080. This in itself is not tantamount to bestowing on the handicapped as a class, a substantive, enforceable federal right, but is only a device whereby federal agencies are requested to fulfill their obligations under the Act.

Therefore, I conclude that the plaintiff is not within a class "for whose especial benefit" Section 503 was enacted. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088.

Because of the conclusion I reached with regard to the first of the *Cort* factors, this case does not, as the plaintiff suggests, fall into the analytical approach suggested by *Cort,*

> in situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to deny such cause of action would be controlling.

442 U.S. at 82, 95 S.Ct. at 2090 (emphasis in original). Therefore, the inquiry remains whether Congress positively intended to

---

**7.** Congress rejected an amendment to the Higher Education Act of 1965 offered by Senator McGovern which would have provided in part:

Section 1206(a). The Secretary shall not make any grant, loan guarantee, or interest subsidy payment, nor shall the Secretary enter into any contract with any institution of higher education, or any other post-secondary institution, training center, or agencies representing such institutions unless the application, contract, or other arrangement for the

grant, loan guarantee, interest subsidy payment, or other financial assistance contains assurances satisfactory to the Secretary that any such institution, center, or agency will not discriminate on the basis of sex in the admission of individuals to any program to which the application, contract, or other arrangement is applicable.

117 Cong.Rec. 30411 (1971) cited in *Cannon,* 441 U.S. n. 14 at 693, 99 S.Ct. n. 14 at 1955.

create a private cause of action under Section 503 which is the second *Cort* factor.

An examination of the legislative history concerning the enactment of Section 503 in 1973 yields little insight into whether Congress intended to authorize a private cause of action. However, the legislative history surrounding the passage of two amendments to the Rehabilitation Act is somewhat more instructive.

In 1974, Congress amended the Rehabilitation Act to clarify the definition of "handicapped persons" under Sections 503 and 504. The Senate Conference Committee Report, Sen.Conf.Rep. No. 93–1270, 93d Cong., 2d Sess. 25–28 (1974), discusses these sections in some detail. *Rogers* summarizes this report as follows:

> [L]ittle attention was directed to enforcement of section 503 but section 504 enforcement was discussed in detail. The Report equated section 504 to section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and section 901 of the Education Amendments of 1972, 20 U.S.C. § 1681. Like those sections, the conferees stated, section 504 is to be enforced by administrative and judicial means, including a private judicial remedy for those harmed by violations of the section.
>
> The Committee failed to make similarly explicit any understanding of section 503. It did, however, note the intent that "sections 503 and 504 be administered in such a manner than a consistent, uniform, and effective federal approach against handicapped persons would result. Sen.Conf.Rep. No. 93–1270, *supra,* at 27.

*Rogers,* 611 F.2d at 1081.

On the basis of this Report, the plaintiff argues that it could be inferred that Congress intended a private right of action under Section 503 by stating its intent that Sections 503 and 504 were to be administered consistently and that Section 504 was clearly intended to give rise to a private cause of action. As stated by the Ninth Circuit, this rough equation of Sections 503 and 504 "falls short of giving a clear indication that a private remedy was intend-

ed." *Fisher v. City of Tucson,* 663 F.2d 861 (9th Cir.1981).

Greater support for the plaintiff's position can be found in the legislative history of the 1978 amendments to the Rehabilitation Act by which Section 505, 29 U.S.C. § 794a, was added. Section 505 provides in part:

> (b) In any action or proceeding to enforce or charge a violation of a provision of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Both the Senate and the House Reports contain unequivocal statements that Section 505 was intended to apply to both Sections 503 and 504. S.Rep. No. 95–890, 95 Cong.2d Sess. 19 (1978); H.R.Rep. No. 95–1149, 95th Cong., 2d Sess. (1978) *reprinted in* [1978] U.S.Code Cong. & Admin.News 7312, 7313. Thus, it is fairly clear that in 1978 committees of both Houses of Congress assumed that a private cause of action under Section 503 had somehow been created in the past. The Supreme Court has cautioned, however, that after-the-fact statements of Congressional intent, while shedding some light on the intent of the enacting Congress, "is not by any means dispositive." *Chrysler Corp. v. Brown,* 441 U.S. 281, 299–300, 99 S.Ct. 1705, 1716–1717, 60 L.Ed.2d 208 (1979). *But see Cannon, supra,* 441 U.S. at 686–87 n. 7, 99 S.Ct. at 1951–52 n. 7.

As a result, my conclusion with regard to the second *Cort* factor is that evidence of contemporaneous Congressional intent to provide a private right of action is ambiguous at best.

I will now proceed to the third *Cort* factor—whether it is consistent with the underlying purposes of the legislative scheme to infer a private right of action. An examination of the statute reveals that Congress provided a complete administrative scheme to remedy Section 503 violations. Further, the implementing regulations, 41 C.F.R. § 60–741–4, provide explicit details for the operation of the enforcement plan with particular emphasis on concilia-

tion and persuasion. To imply a private cause of action, then, would run counter to the Congressional purpose and administrative scheme to emphasize more informal means of dispute resolution. *See Davis v. United Air Lines*, 662 F.2d at 126; *Rogers*, 611 F.2d at 1084–85.

The plaintiff places great weight on the fact that OFCCP had at one time advocated a private cause of action. *See* Affidavit of Weldon J. Rougeau, Director of OFCCP appearing as Appendix to *Rogers*, 611 F.2d at 1108–09. It is unclear whether this remains the position of the Labor Department. Even if it were, however, I do not believe it is entitled to great weight because it is premised in large part on "the large backlog of Section 503 administrative complaints which the Department of Justice, due to limited resources, will not be able to investigate and resolve expeditiously." *Id.* ¶ 3 at 1108. As the *Davis* court stated, "[w]hile the lack of executive resources to enforce an act of Congress is regrettable, it is hardly the judiciary's role to redress that lack by inferring a judicial remedy." 662 F.2d at 126–27.

Finally, the application of the fourth *Cort* factor is the clearest—discrimination against the disabled has not been a matter traditionally relegated to state law.

On balance, I find that the application of the four *Cort* factors together with the unanimous results reached by the eight circuit courts which have considered the question, require the conclusion that Section 503 of the Rehabilitation Act of 1973 does not authorize an implied private right of action.

### B. Review of OFCCP's Final Decision

■ Before I can proceed to review the adequacy of OFCCP's final decision, it is necessary to resolve a dispute as to the appropriate standard of review. The plaintiff has suggested that the appropriate standard is whether the agency's decision "has a reasonable basis in law." *See Volkswagenwerk Aktiengesellschaft v. Federal Maritime Comm.*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090

(1968). The reasonable basis in law standard is appropriate in those situations in which the agency is effectively making a legal conclusion—providing a construction of the statute with which it is charged with administration. Although some personnel within the OFCCP apparently believed that an interpretive ruling had been made regarding a new definition of qualified handicapped individuals, *see* discussion *infra*, it appears that the agency was, at least in respect to its final action—defendant Bergman's notification letter—acting in the traditional administrative manner of applying a statute and regulations to a given set of facts. In this situation, it is appropriate that the administrative decision should be upheld unless it is shown to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). *See BASF Wyandotte Corp. v. Castle*, 598 F.2d 637, 647 (1st Cir.1979).

■ Even with this very narrow standard of review, I am unable to sustain the agency's decision at this time. In making its initial findings of facts, the Regional Office of the OFCCP stated that the plaintiff was a "handicapped individual within the meaning of section 503." *See supra* n. 1. Some seven months later, however, the Regional Office, *sua sponte*, issued a Reissuance of Notification signed by the Boston Area Director referring to "a recent ruling indicating that alcoholics who are receiving treatment for alcoholism are not to be qualified handicapped individuals under Section 503 of the Rehabilitation Act of 1973." The Area Director went on to state, "[b]ased on [this] notification ..., the complainant is not considered to be a qualified handicapped individual under the law."

The term "handicapped individual" is explicitly defined in the Act. Section 7(7), 29 U.S.C. § 706(7), states in part that for purposes of Sections 503 and 504 the term handicapped individual

does not include any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of

the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(7)(B). Thus, insofar as the conclusions contained in the Reissuance of Notification by the Area Director are premised on a nonexistent and erroneous ruling that alcoholics who are receiving treatment are *automatically* unqualified, these conclusions are arbitrary, capricious and contrary to law.

■ In the final administrative action, defendant Bergman upheld the revised decision of the Regional Office that the plaintiff "is not a covered individual under the Act." Defendant Bergman did not repeat the incorrect statement of section 7(7) that was contained in the Area Director's Reissuance; but accurately paraphrased the law by stating "[a]lcoholics, *per se,* are not considered handicapped if alcohol abuse is current and prevents the individual from performing his/her job."

I am unable, however, to reach a conclusion as to whether defendant Bergman's action was arbitrary or capricious because in denying the plaintiff's complaint, she made no findings of fact or statement of reason other than to state that "[s]uch was the case here," meaning that the plaintiff's alcohol abuse was current and it prevented him from performing his job. Standing alone, this statement is a bare conclusion and contains no reasons why the plaintiff's alcohol abuse prevented him from performing his job. Defendant Bergman may not rely on the findings of fact made by the Regional Office because they are inconsistent and, at least with respect to the Reissuance, premised on an incorrect understanding of the definition of handicapped individuals under the Act.

Being unable to conclude whether the administrative agency's action was arbitrary or capricious because of the lack of findings, and not having a full administrative record, I shall remand the case to the Director of the OFCCP with instructions that the agency expeditiously conclude its investigation and make detailed findings of fact on whether the plaintiff's alcoholism prevented him from performing his job and whether I.U.S.' dismissal of the plaintiff and its subsequent failure to rehire him were in violation of Section 503 of the Act. *See Helvering v. Rankin,* 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343 (1935).

An appropriate Order shall issue.

## ORDER

For the reasons set forth in a Memorandum issued this date, the Court makes the following orders with respect to the above-captioned case:

*First,* defendant Interstate Uniform Service's motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) must be, and hereby is, GRANTED;

*Second,* the remainder of the case is remanded to the Office of Federal Contract Compliance Programs ("OFCCP") of the United States Labor Department with the following instructions to defendant Ellen Shong Bergman:

(a) The OFCCP shall investigate the plaintiff's complaint with respect to defendant Interstate Uniform Service's allegedly improper dismissal *and* failure to rehire the plaintiff on account of his alleged handicap;

(b) The OFCCP shall provide a statement of reasons for its conclusions as to whether the plaintiff is a qualified handicapped individual for purposes of Section 503 of the Rehabilitation Act of 1973. Specifically, the OFCCP must specify in what ways the plaintiff's alcoholism did or did not prevent him from performing the duties of his job;

(c) The agency shall conclude all administrative action on the plaintiff's claims within sixty (60) days of the issuance of this Order; and

(d) In the event the plaintiff seeks further judicial review, the OFCCP shall provide a complete administrative record to the reviewing court.

It is So Ordered.