Gary Michael POWERS and Kimberly
Ann Powers, Plaintiffs,

v.

MJB ACQUISITION CORPORATION,
d/b/a Wyoming Technical Institute, a
Wyoming Corporation, and John Does I
through X, Defendants.

No. 97–CV–139–B.

United States District Court,
D. Wyoming.

Feb. 3, 1998.

Richard Gage, Cheyenne, WY, John E. Stanfield, Clinton D. Summerfield, Jr, Laramie, WY, for Plaintiff.

David P. Hersh, Englewood, CO, for Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter is before the Court on the separate summary judgment motions of Defendant MJB Acquisition Corporation (the Institute) and Plaintiffs Gary and Kimberly Powers. The Court FINDS and ORDERS as follows:

### Background

Plaintiff, Michael Powers, is an incomplete paraplegic. He requires braces on both legs and the aid of crutches to walk. In 1995, Powers moved his family to Laramie, Wyoming to attend classes at Defendant Wyoming Technical Institute (the Institute). Although the Institute was aware of Powers' disability even before he enrolled, it did not, according to Powers, make any effort to accommodate him. Powers specifically asserts the Institute did not provide him with sufficient handicapped parking, accessible restrooms, or the equipment necessary to safely perform his assigned tasks. As a result, Powers suffered various injuries while in attendance, including eye burns and a broken leg. The Institute submits in response that it made numerous and substantial accommodations. In any event, Powers withdrew from the Institute and informed it he would not return until his disability was accommodated.

Powers and his wife Kimberly brought this action, alleging that the school should have informed Powers prior to his attendance that it could not or would not accommodate him. Plaintiffs have pleaded the following nine causes of action: (1) negligence, landowner liability, loss of consortium; (2) fraud; (3) intentional infliction of emotional distress; (4) breach of duty of good faith and fair dealing; (5) discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701; (6) discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101; (7) discrimination in violation of federal law, 20 U.S.C. § 1681; (8) discrimination in violation of federal regulations, 34 C.F.R. Pt. 104; and (9) punitive damages. Defendant Institute seeks the entry of summary judgment on Plaintiffs' fourth, fifth, sixth, seventh, and eighth causes of action. Plaintiffs, in a separate motion, seek the entry of summary judgment on their second claim (fraud) and fourth claim (breach of the duty of good faith and fair dealing).

### Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit; an issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing summary judgment. *See Walker v. Toolpushers Supply Co.*, 955 F.Supp. 1377 (D.Wyo.1997). In determining whether to grant summary judgment, the Court must examine the factual record in the light most favorable to the nonmoving party. *See Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995).

### Analysis

**1. The Institute's Motion for Summary Judgment**

As noted above, the Institute asserts numerous grounds in seeking the entry of summary judgment. The Court will consider the Institute's arguments in turn.

**(a) Breach of Duty of Good Faith and Fair Dealing**

Plaintiffs' fourth cause of action seeks to recover based on the Institute's alleged breach of an implied duty of good faith and fair dealing. Plaintiffs assert that Powers' enrollment at the Institute formed a contract between the parties that contained an implied covenant to act in fairness and good

faith. The Institute does not dispute that Wyoming has recognized a cause of action for breach of such a duty, but claims that such actions are limited to the insurer-insured and employer-employee contexts.

■ The Wyoming Supreme Court has, in a series of cases, recognized that in limited circumstances a cause of action for breach of an implied covenant of good faith and fair dealing may be available to a plaintiff. *See State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813 (Wyo.1994); *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211 (Wyo.1994); *McCullough v. Golden Rule Ins., Co.,* 789 P.2d 855 (Wyo.1990). In *Wilder,* generally recognized as the seminal case in Wyoming on the subject, the Wyoming Supreme Court stated as follows:

> The Restatement (Second) of Contract § 205 at 99 (1981) recognizes an implied duty of every contract:
>
> § 205 Duty of Good Faith and Fair Dealing
>
> Every Contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.
>
> Good faith means faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because [such conduct] violate[s] community standards of decency, fairness, and reasonableness.
>
> \* \* \*
>
> When a special relationship of trust and reliance is demonstrated, a breach of the implied covenant is actionable as a tort.

*Wilder,* 868 P.2d at 220, 222.

While it is true that the tort has so far been applied only to employers and insurers, there is no overt indication from the Wyoming courts that it is limited to those contexts. Indeed, *Wilder* and *Shrader,* among other Wyoming cases, cite without reservation § 205 of the Restatement (Second) of Contracts, which unambiguously provides that a duty of good faith and fair dealing arises out of *every* contract. *See Wilder,* 868 P.2d at 220; *Shrader,* 882 P.2d at 825; *see*

*also McIlravy v. Kerr–McGee Corp.,* 119 F.3d 876, 882 (10th Cir.1997); *Cenex, Inc. v. Arrow Gas Service,* 896 F.Supp. 1574, 1581–82 (D.Wyo.1995); *Duart v. FMC Wyoming Corp.,* 859 F.Supp. 1447, 1463 (D.Wyo.1994). Thus, the tort's parameters are defined not by its inclusion in or exclusion from random, predetermined categories of contracts, but by the existence or non-existence of a special relationship of trust and reliance between "the tort-victim and the tort-feasor." *Wilder,* 868 P.2d at 221. Such a relationship can be shown by the existence of separate consideration, common law or statutory rights, or rights accruing with longevity of service. *See. id.*

■ The Court finds that a cause of action for breach of an implied duty of good faith and fair dealing exists not merely in employment and insurance contracts, but in every contract in which a special relationship of trust and reliance exists between the parties. *See* Restatement (Second) of Contracts § 205. The Court further finds that the evidence would permit a finding of a special relationship here. Powers had a statutory right, under the Rehabilitation Act and the ADA, not to be discriminated against or unlawfully precluded from participation in the Institute's programs based on his disability. As noted, a statutory right is sufficient to establish the requisite special relationship between Powers and the Institute. Hence, this is one of those "rare" cases in which the duty of good faith and fair dealing is sufficient to give rise to tort liability. That said, the actual determination of whether the Institute failed to act in good faith is an issue for the jury.

**(b) Rehabilitation Act**

Plaintiffs' fifth cause of action invokes section 504 of the Rehabilitation Act, found at 29 U.S.C. § 794(a):

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity re-

ceiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

■ The first of the Institute's numerous contentions as to this claim is that the Rehabilitation Act claim should be dismissed due to Plaintiffs' failure to exhaust administrative remedies. The law is unambiguous and well-settled that exhaustion is required in the Rehabilitation Act context only when a federal employee and federal employer are involved in the case. *See Tuck v. HCA Health Services,* 842 F.Supp. 988, 991 (M.D.Tenn.1992), *aff'd,* 7 F.3d 465, 471 (6th Cir.1993)(noting that every "court of appeals which has considered the issue whether to apply the exhaustion requirement to non-federal employees under the statute has decided not to apply the requirement"); *see also Hawkins v. Defense Logistics Agency of the Dept. of Defense,* 99 F.3d 1149 (10th Cir.1996)(unpublished). Exhaustion is not required when a private individual sues another private individual or entity. *See Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1381–82 (10th Cir.1981); *Davoll v. Webb,* 943 F.Supp. 1289, 1297 (D.Colo.1996); *Tuck,* 842 F.Supp. at 991; *Sanders v. Marquette Pub. Schs.,* 561 F.Supp. 1361, 1369 (W.D.Mich.1983); *Anderson v. Banks,* 520 F.Supp. 472, 509 (S.D.Ga.1981); *Cain v. Archdiocese,* 508 F.Supp. 1021, 1024 (D.Kan. 1981). Because Powers is not a federal employee, the exhaustion requirement does not apply.

■ The Institute asserts secondly that it never excluded Powers from a position or program, and thus that he cannot state a claim under § 504. This argument, however, ignores that § 504 by its very terms protects not only those excluded from a program or activity, but also those who are "denied the benefits of," or are "subject to discrimination under" such a program or activity. Powers does not deny that he was not, at least initially, excluded from attending the Institute. Rather, he contends he was unlawfully denied the benefits of participation in the Institute's programs and was unlawfully discriminated against on the basis of his disability.

■ The Institute further attacks this claim on the basis that Powers was not an "otherwise qualified individual" as contemplated by § 504. An otherwise qualified individual is one who with or without reasonable accommodation can perform the essential functions of the position in question. *See Gilbert v. Frank,* 949 F.2d 637, 641 (2d Cir. 1991); *Suttles v. United States Postal Service,* 927 F.Supp. 990, 1005 (S.D.Tex.1996); *Tuck,* 842 F.Supp. at 992–93. The Institute argues here that Powers was so disabled that he would have been unable to complete his course work even with the addition of all reasonable accommodations. The Institute does not, however, specify exactly what course work would not have been accessible to Powers had he been provided with reasonable accommodations. Furthermore, the Court finds it persuasive that prior to enrolling at the Institute, Powers made several inquiries of school officials regarding the extent to which his disability would affect his studies. Powers claims he was assured by school officials—who both visited with him at his home and later guided him on a tour of the Institute grounds while he was wearing his crutches and braces—that his disability would be accommodated or not be a problem. Finally, the Institute's acceptance committee apparently conducted a further review of Powers' application before admitting him, and notified him upon acceptance that he "should have confidence in [his] ability to complete [his] training successfully." These facts are sufficient to support the inference that Powers was an otherwise qualified individual. *See Doe v. City of Chicago,* 883 F.Supp. 1126, 1135–36 (N.D.Ill.1994)(passing precondition test sufficient to satisfy "otherwise qualified individual" requirement).

■ Finally, the Institute relies on this Court's decision in *Ortega v. Rhone–Poulenc,* 842 F.Supp. 488 (D.Wyo.1994), to argue that § 504 does not provide Plaintiffs a private cause of action. There, however, the Court found only that an implied cause of action did not exist under § 503 of the Rehabilitation Act; the Court expressed no opinion as to the existence of such a right under § 504. Indeed, the overwhelming weight of authority suggests that, at least with respect to non-

federal employees, a private cause of action is implied under § 504. *See Smith v. United States Postal Serv.*, 766 F.2d 205, 206 (6th Cir.1985); *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981)(citing cases); *Roe v. Housing Auth.*, 909 F.Supp. 814, 820 (D.Colo. 1995); *Woolfolk v. Duncan*, 872 F.Supp. 1381, 1387 (E.D.Pa.1995); *Sanders*, 561 F.Supp. at 1368–69; *Anderson*, 520 F.Supp. at 509–10; *Cain*, 508 F.Supp. at 1023; *see also Reeder v. Frank*, 813 F.Supp. 773, 777 (D.Utah 1992)(noting that federal employees do not have private cause of action under § 504). Given this authority, the Court rejects the Institute's argument.

### (c) Americans With Disabilities Act

▮ Plaintiffs' sixth cause of action seeks relief based on Subchapter III (Title III) of the Americans With Disabilities Act (ADA). The Institute asserts first, and correctly, that Title III of the ADA does not provide for a private cause of action for damages. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Section 12188 of Title 42 provides that "the remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures" available under this subchapter. Section 2000a–(3)(a), in turn, limits remedies to "a civil action for preventive relief, including an application for a permanent or temporary injunction [or] restraining order." This limitation does not compel dismissal of Plaintiffs' ADA claim, as Plaintiffs' seek under that claim not merely the nonallowable monetary damages but permissible injunctive relief. In addition, Plaintiffs may, if successful, be entitled to attorneys' fees and costs under this section. *See* 42 U.S.C. § 2000a–3(b); *Newman*, 390 U.S. at 401–02.

▮ Next, the Institute claims it is not required to meet the architectural guidelines specified by the ADA because "the buildings at Wyoming Technical Institute existed prior to the enactment of the ADA and are therefore excluded from meeting the architectural guidelines established under the Act. Any requirements imposed by the ADA on Wyoming Technical Institute would arise only at the time an individual with a disability sought admission to its facilities."

The only authority cited in support of this argument is 28 C.F.R. § 36.401. That section deals exclusively with new construction and specifies that buildings constructed for first occupancy after January 26, 1993 must, to satisfy the ADA, be designed and constructed in a manner readily accessible and usable by those with disabilities. Section 36.401 can in no way be read to excuse from ADA compliance every entity housed in a building more than five years old. Indeed, the ADA specifically requires facilities existing at the time of its enactment to remove "architectural barriers ... where such removal is readily achievable." *See* 42 U.S.C. § 12182(b)(2)(A)(iv) & (v); *Paralyzed Veterans of America v. Ellerbe Becket Architects*, 950 F.Supp. 393 (D.D.C.1996). As for the Institute's assertion that ADA requirements arise only when a disabled individual seeks admission to its facilities, the Court notes that the Institute has described the exact circumstance which gave rise to this lawsuit: Powers is disabled, he sought admission to the Institute, and has now brought suit under the ADA for, among other things, the Institute's alleged failure to make reasonable modifications or accommodations.

The Institute's last ADA-related contention is that it made—as a matter of law—reasonable accommodations for Powers. Plaintiffs respond by submitting that while some accommodations were made, it is for a jury to determine if the Institute could have reasonably made additional accommodations without suffering an undue hardship. Before addressing the merits of these arguments, the Court is compelled to direct the parties' attention to matters, that although not briefed and not dispositive, deserve mention.

It is apparent from Plaintiffs' Complaint and from the record in this matter that Plaintiffs are proceeding under subchapter III, or Title III, of the ADA. Title III prohibits disability-based discrimination in private elementary, secondary, undergraduate, or postgraduate schools, or other places of education. *See* 42 U.S.C. §§ 12181(7)(J) & 12182. This definition encompasses the In-

stitute. Discrimination under Title III includes, but is not limited to the following:

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, practices, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

\* \* \*

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, ... where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

■ Nowhere does Title III employ the term "reasonable accommodation;" that term appears in Title I of the ADA and applies only to employers. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir.1997); *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 n. 1 (9th Cir.1997); *see also DeBord v. Board of Educ.*, 126 F.3d 1102, 1106 (8th Cir.1997). There appears, however, to be little if any substantive difference between a "reasonable accommodation" as required by Title I and a "reasonable modification" as required by Title III. As defined by the ADA, a reasonable accommodation is one that would not place undue hardship on an employer, *see* 42 U.S.C. § 12111(9) & (10), while a reasonable modification is one that would not require fundamental alterations to a program, policy, or facility, *see id.* § 12182. Thus, Title I provides an undue hardship defense, whereas Title III provides a fundamental alteration defense. *See Johnson*, 116 F.3d at 1059.

■ Those courts that have considered the issue in any depth have generally followed the reasonable modification analysis set forth by the Second Circuit in *Staron v. McDonald's Corp.*:

Whether a particular modification is reasonable involves a fact-specific, case-by-inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.

51 F.3d 353, 355–56 (1995). *See Pazamickas v. New York State Office of Mental Retardation and Development Disabilities*, 963 F.Supp. 190, 195 (N.D.N.Y.1997); *Heather K. By Anita K. v. City of Mallard*, 946 F.Supp. 1373, 1387–89 (N.D.Iowa 1996)(discussing reasonable modifications under Title II of the ADA); *see also Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1036–37 (6th Cir.1995)(defining reasonable modification as one connoting moderate change); *Easley v. Snider*, 36 F.3d 297, 305 (3d Cir. 1994)("The test for determining the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program."). Thus, like a reasonable accommodation, a reasonable modification is presumably one that is feasible in terms of design and cost.

■ Regardless of how the standard is phrased, one thing is clear: in most circumstances, the determination of what constitutes a reasonable modification or accommodation is a fact-intensive question ill-suited for resolution at the summary judgment stage. *See Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir.1996); *Staron*, 51 F.3d at 356; *Heather K. By Anita K.*, 946 F.Supp. at 1388–89. Here, factual issues abound and preclude summary judgment. Although the Institute submits a lengthy list of modifications allegedly made to accommodate Powers, Plaintiffs respond with an equally lengthy list of modifications that were not made, but purportedly could have been without undue burden. Therefore, the Court will deny the Institute's motion on this claim.

**(d) Title IX**

For reasons not clear to the Court, Plaintiffs have filed a patently baseless claim

premised on Title IX's prohibition of sex or blindness discrimination. There is no assertion or evidence—nor could there be on the facts in the record—that Powers was discriminated against on either of these bases. This claim is dismissed.

### (e) Violation of 34 C.F.R. Pt. 104

Lastly, the Institute challenges Plaintiffs' claim that a private cause of action exists under 34 C.F.R. Pt. 104. That section provides:

> The purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance.

▮ The Court is unable to discern the reason for Plaintiffs' inclusion of this claim in their Complaint. Pt. 104 by its very terms states that its only purpose is to effectuate § 504 of the Rehabilitation Act. Given that Plaintiffs have stated a claim under § 504 any claim that could possibly be asserted under 34 C.F.R. Pt. 104 is obviously redundant. Furthermore, there is no authority—and Plaintiffs do not direct the Court's attention to any—indicating that Congress intended Pt. 104, or any other similarly obscure regulation, to bestow upon individuals a private cause of action. The Court therefore will dismiss this claim.

### 2. Plaintiffs' Motion for Summary Judgment

Plaintiffs seek summary judgment on their fraud and breach of implied duty of good faith and fair dealing claims.

▮ In *White v. Continental General Ins. Co.*, this Court set forth the standard for proving fraud: In order to constitute fraud, there must be a false or fraudulent statement or misrepresentation or concealment of a material fact, made by the defendant to induce action or inaction, which was reasonably and justifiably believed to be true by the plaintiff and relied upon by the plaintiff to his damage. As a general rule, the allegedly false representations relied on by the plaintiff must relate to existing facts, and mere prom-

ises in the future are insufficient.... [This] rule is subject to an exception to the effect that if the representation, although promissory in nature, is made with no intention of performing it or with a present intention not to perform, it may serve as a foundation for an action in fraud. The rationale is that the promisor's intention not to perform is itself a misrepresentation of an existing fact. 831 F.Supp. 1545, 1557 (D.Wyo.1993).

▮ Plaintiffs apparently claim the Institute intentionally represented to Powers that he would be able to complete his studies or that his disability would be accommodated, despite knowing at the time they were made that any such representations were false. While the Court agrees with Plaintiffs that the evidence permits a reasonable inference of fraud, the Court disagrees that the evidence is sufficiently strong to warrant summary judgment. Questions of intent necessarily are fact-intensive and best suited for jury determination. *See id.*

The Court further declines to enter summary judgment in Plaintiffs' favor on their claim for breach of the implied duty of good faith and fair dealing. As discussed above with respect to the Institute's Motion on this same issue, the Court finds that there remain for determination genuine issues of material fact.

### *Conclusion*

Based on the foregoing, the Court **ORDERS** that Defendant MJB Acquisition Corporation's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendant's Motion is **GRANTED** with respect to Plaintiffs' claims under Title IX and 34 C.F.R. Pt. 104, and **DENIED** in all other respects. Plaintiffs Gary Powers' and Kimberly Powers' Motion for Summary Judgment is **DENIED**.