Lance WHITE, Plaintiff,

v.

DENVER SEMINARY, Defendant.

Civ.A. No. 01–B–197.

United States District Court,
D. Colorado.

Aug. 13, 2001.

Cathy Ann Klein, Cathy A. Klein, R.N., P.C., Denver, CO, for plaintiff.

Susan E. Duffey Campbell, Holme, Roberts & Owen, Colorado Springs, CO, James M. Dieterich, Franz Hardy, White & Steele, P.C., Denver, CO, for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiff Lance White brings claims for violation of the Rehabilitation Act, breach of contract, breach of the covenant of good faith and fair dealing, negligence, promissory estoppel, and violation of the Americans with Disabilities Act ("ADA") against Defendant Denver Seminary. Denver Seminary moves to dismiss Mr. White's ADA claim pursuant to 12(b)(1) and 12(b)(6). The motion is adequately briefed and oral argument would not materially

aid its resolution. For the reasons set forth below, I convert Defendant's motion to a motion for summary judgment pursuant to Fed.R.Civ.P. 56 and grant the motion.

## I. Facts

The following facts are alleged in Mr. White's Second Amended Complaint. In 1996 Mr. White was admitted as a graduate student by Denver Seminary. Mr. White suffers from Tourettes Syndrome, Attention Deficient Hyperactivity Disorder, and Obsessive/ Compulsive Disorder. Mr. White alleges that Denver Seminary discriminated against him in a variety of ways, including preventing him from applying for senior status, requiring that he take time off for counseling and medications as a condition of continuing his studies, requiring him to take the MMPI test twice, refusing to provide faculty endorsement for senior status, requiring him to enter into a learning contract, and requiring him to complete a training and mentoring program. Denver Seminary did not require these things of non-disabled students.

Denver Seminary ultimately dismissed Mr. White, informing him that the reasons for the dismissal were his failure to apply for senior status, as well as his poor relationships. Mr. White alleges that these reasons were pretextual, and that Denver Seminary discriminated against him because of his disabilities.

## II. Motion to Dismiss

Denver Seminary moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

### A. Standards for Dismissal

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). Under Rule 12(b)(6), however, a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). I read Denver Seminary's motion under a Rule 12(b)(6) standard, as it does not argue that jurisdiction is lacking, but rather that Denver Seminary has been granted a statutory exemption from Title III of the ADA. In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999).

Rule 12(b) provides that if matters "outside the pleading" are presented to and not excluded by the court, it should treat the motion to dismiss as one for summary judgment. *See* Rule 12(b); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Foremaster v. City of St. George,* 882 F.2d 1485, 1491 (10th Cir. 1989). Failure to convert a motion to dismiss so postured to a motion for summary judgment under Fed.R.Civ.P. 56 is reversible error. *See Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). Here, both Mr. White and Denver Seminary present evidence. I therefore consider this issue under the summary judgment standard.

The purpose of a summary judgment motion is to assess whether trial is necessary. *See White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Rule 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depo-

sitions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. Rule 56(e); *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### B. Motion for Summary Judgment

■ Denver Seminary moves for summary judgment on Mr. White's ADA claim, arguing that as a religious institution it is exempt from the ADA. I agree.

Mr. White's ADA claim is based on Title III of that Act. Title III prohibits discrimination in public accommodations and services operated by private entities. *See* 42 U.S.C. §§ 12181–12189. That Title provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." 42 U.S.C. § 12182(a). The phrase "public accommodation" is defined in terms of 12 extensive categories, *see* § 12181(7), including private elementary, secondary, undergraduate, or postgraduate schools, or other places of education. *See* 42 U.S.C. §§ 12181(7)(J); *Powers v. MJB Acquisition Corp.*, 993 F.Supp. 861, 867 (D.Wyo.1998). Legislative history indicates that the Act should be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled.

*See PGA Tour, Inc. v. Martin*, 531 U.S. 1049, 121 S.Ct. 1879, 1882, 149 L.Ed.2d 904 (2001).

However, Title III by its terms does not apply to "religious organizations or entities controlled by religious organizations, including places of worship." 42 U.S.C. § 12187; *PGA Tour*, 121 S.Ct. at 1897 n. 51 (2001) (noting that Congress "expressly exempted" religious organizations or entities from Title III's coverage). Although no Court has previously addressed the scope of this provision, 28 C.F.R. Pt. 36, App. B states,

> The ADA's exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations. Religious organizations and entities controlled by religious organizations have no obligations under the ADA. Even when a religious organization carries out activities that would otherwise make it a public accommodation, the religious organization is exempt from ADA coverage. Thus, if a church itself operates a day care center, a nursing home, a private school, or a diocesan school system, the operations of the center, home, school, or schools would not be subject to the requirements of the ADA or this part. The religious entity would not lose its exemption merely because the services provided were open to the general public. The test is whether the church or other religious organization operates the public accommodation, not which individuals receive the public accommodation's services

The Regulations also address the situation in which a pervasively religious organization includes secular boards or other departments.

> Religious entities that are controlled by religious organizations are also exempt from the ADA's requirements. Many

religious organizations in the United States use lay boards and other secular or corporate mechanisms to operate schools and an array of social services. The use of a lay board or other mechanism does not itself remove the ADA's religious exemption. Thus, a parochial school, having religious doctrine in its curriculum and sponsored by a religious order, could be exempt either as a religious organization or as an entity controlled by a religious organization, even if it has a lay board. The test remains a factual one—whether the church or other religious organization controls the operations of the school or of the service or whether the school or service is itself a religious organization.

*Id.*

Here, Denver Seminary is a pervasively religious organization. It provides a graduate education founded on and steeped in Biblical teachings. *See* Exhibit 6–8. Its sole mission is to train students for Christian ministry. *See* Exhibits A–C. In the process it teaches "historic, evangelical faith." *See* Exhibit D at ¶ 2. It was founded by the Conservative Baptist Association of Colorado, and a majority of its Board of Trustees must be members of the Conservative Baptist Association. *See* Exhibit A at ¶ 3–4. Denver Seminary employs only individuals who "(a) profess a personal belief in Jesus Christ as a personal Savior; (b) subscribe to a statement of faith … and (c) are active members of a local Christian Church." Exhibit A at 17. Faculty and other employees must sign a statement of religious beliefs in order to remain at Denver Seminary. *See* Exhibit E–F. Students are required to participate in a religious curriculum and attend weekly chapel. *See* Exhibits 6–8, 14. This evidence is not genuinely disputed. I therefore conclude that Denver Seminary is a religious organization as contemplated by 42 U.S.C. § 12187.

Mr. White argues, however, that Denver Seminary is an institute of higher education as defined in 42 U.S.C. § 11851(7), and is thus subject to the ADA. I disagree. Mr. White provides ample evidence that the Seminary is a accredited graduate school. However, the Federal Regulations make clear that a religious institution may provide educational services, including higher education, without losing the exemption from Title III of the ADA. *See* 28 C.F.R. Pt. 36, App. B.

Mr. White next argues that because Denver Seminary has publicly stated that it complies with the Rehabilitation Act and the ADA, it cannot be exempt from the ADA. I again disagree. The exemption provided by 42 U.S.C. § 12187 applies only to Title III. Denver Seminary agrees that it is subject, however, to other provisions of the ADA. It states that it acts in accordance with the ADA when required by law to do so. Such an admission does not create jurisdiction over a religious organization that Congress has specifically exempted from suit. I therefore conclude that Denver Seminary is a religious organization, and thus is exempt from the provisions of Title III of the ADA.

Accordingly, IT IS ORDERED that:

1. Defendant's motion to dismiss Plaintiff's Americans with Disabilities Act claim is converted to a motion for summary judgment;

2. Defendant's motion for summary judgment is GRANTED; and

3. Costs are awarded to the Defendant.