

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2007

# Doe v. Abington Friends Sch

Precedential or Non-Precedential: Precedential

Docket No. 05-1405

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Doe v. Abington Friends Sch" (2007). *2007 Decisions*. Paper 1386.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1386

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1405

BENJAMIN DOE, a Minor, by his Parents,
Joseph and Julie Doe; JOSEPH DOE, Individually
and on Their Own Behalf; JULIE DOE, Individually
and On Their Own Behalf,

v.

ABINGTON FRIENDS SCHOOL;
PHILIP VINOGRADOV;
JODI PICKERING; RUSSELL SHAW

Benjamin Doe; Joseph Doe; Julie Doe,
Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 04-cv-04647)
District Judge: Honorable Juan R. Sanchez

Argued September 28, 2006

Before: McKEE and AMBRO, <u>Circuit Judges</u>
RESTANI,[*] <u>Chief Judge</u>

(Opinion filed: March 15, 2007)

Carl W. Hittinger, Esquire (Argued)
Piper
1650 Market Street
One Liberty Place, 50th Floor
Philadelphia, PA 19103

Neil C. Schur, Esquire
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA   19103

 Counsel for Appellants

J. Scott Kramer, Esquire (Argued)
David E. Loder, Esquire
Amanda M. Leadbetter, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA   19103

 Counsel for Appellees

---

[*]Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

OPINION OF THE COURT

AMBRO, Circuit Judge

Joseph and Julie Doe,[1] on behalf of themselves and their minor son, Benjamin, filed suit against Abington Friends School ("Abington") and three of its employees. Their suit, grounded for federal purposes in the Americans with Disabilities Act ("ADA"), *see* Pub. L. No. 101-336, 104 Stat. 327 (1990) (codified at 42 U.S.C. §§ 12101–213), alleges that Abington did not adequately accommodate Benjamin's diagnosed Attention Deficit Disorder and related learning disabilities.[2] It claims as well that the individual defendants subjected Benjamin to a discriminatory environment complete with public humiliation, improper physical discipline, and an orchestrated campaign to

---

[1] The last name is a pseudonym to protect the plaintiffs' interest in medical confidentiality.

[2] The Does' complaint contains six counts. Count I is the only federal-law claim and is brought under Title III of the ADA. *See* 104 Stat. 353–65 (codified at 42 U.S.C. §§ 12181–89). Counts II–VI allege state-law causes of action, including breach of contract, breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, assault, and battery.

force his withdrawal from the school.

The District Court granted summary judgment for the defendants, ruling that the ADA's exemption for religious organizations applied to bar the Does' claim. It made this decision on the basis of a single affidavit submitted by the defendants and before allowing the Does any discovery into the factual basis for applying the religious exemption. We conclude that the Court, in so doing, contravened Federal Rule of Civil Procedure 56(f), and we thus vacate and remand.

## I. Factual Background

Established in 1697, Abington is "the oldest primary and secondary educational institution in the United States that has operated continuously at the same location." It is affiliated with the Abington Monthly Meeting of the Religious Society of Friends (Quakers). Determining the extent of that affiliation forms the background of this appeal. The Does assert in paragraphs 20 and 21 of the Complaint that

> [a]lthough [Abington] purports to embrace tenets of the Quaker religion in its educational program, [it] is not a religious entity, a religious organization, or an entity controlled by a religious organization. [Abington] does not conduct itself or hold itself out as a religious organization or an entity controlled by a religious organization.

4

This allegation is significant because the ADA provides that its provisions "shall not apply . . . to religious organizations or entities controlled by religious organizations, including places of worship." 42 U.S.C. § 12187. If Abington is a religious organization (or controlled by one), then the Does' ADA claim should be dismissed and, likely, their remaining claims sent to state court.

The Does filed this action in early October 2004. On November 1st, at a hearing meant to explore the Does' confidentiality concerns, Abington instead raised the issue of the ADA exemption for religious organizations and noted the school's long religious history. Counsel for the Does responded that, while Abington may have been a religious institution in the past, it has strayed from its religious foundation and, therefore, is not eligible for the ADA exemption. After some discussion, the Court declined to proceed too far without formal briefing and mentioned that there "may have to [be] some limited discovery on this issue." It expressed a desire to "set out a schedule so th[e] issue could be developed factually and properly presented before me so that I could decide it before we go any further." Rather than allow the Does any discovery, however, Abington filed on November 24th a motion to dismiss or, in the alternative, for summary judgment on Count I, arguing that it is exempt from the requirements of the ADA.

Along with its motion, Abington submitted the affidavit of Thomas W. Price, Abington's Head of School. Price referred

5

to Abington Friends School and the Abington Monthly Meeting as "virtually one and the same." He said that Abington is "under the care of Abington Monthly Meeting" and referenced a trust formed for the benefit of both the School and the Meeting. According to Price, "[t]he Meeting owns the grounds and buildings and oversees the School through its standing committees, including the School Committee[,] . . . three-quarters of whom must be members of the Abington Monthly Meeting." Further, "[t]he School Committee . . . is responsible for the financial health of the School, for the fulfillment of its mission (fidelity to Quaker principles and testimonies), and the selection and supervision of the Head of School." Price reported that "[t]he day to day operation of [Abington] is delegated by the School Committee to the Head of School and other personnel." In addition, Price described various religious aspects of the Abington's operation, saying it "is guided by Quaker values, principles and testimonies. Teachers and administrators participate annually in professional development activities focused on keeping the School's Quaker spirit vital and relevant." Abington students "participate in weekly Meeting for Worship." Moreover, "the key Quaker testimonies (equality, peaceful resolution of conflict, stewardship, community) are fully integrated into the curriculum at every level," a process overseen by a "Quakerism Coordinator" in each division of the school. In summary, Price observed that "[a]n Abington Friends School education is so fully an experience drawn from Quaker values and traditions, it is difficult to identify many practices, rituals or activities that are

*not* rooted in Quaker faith and practice."

In response to Abington's motion and Thomas Price's affidavit, the Does moved pursuant to Federal Rule of Civil Procedure 56(f) for a continuance so that discovery could take place on whether the ADA's religious exemption properly applied to Abington.[3] The motion was accompanied by an affidavit from Carl W. Hittinger, the Does' attorney, which argued that Abington's motion was "premature" because the case was "in its infancy" and the Does had not had "an opportunity to conduct the full and fair discovery needed to

[3]Rule 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." FED. R. CIV. P. 56(f). We have repeatedly noted the need for a party moving under Rule 56(f) to accompany the motion with a supporting affidavit detailing "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988); *see also St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1313–14 (3d Cir. 1994); *Radich v. Goode*, 886 F.2d 1391, 1393–94 (3d Cir. 1989); *Lunderstadt v. Colafella*, 885 F.2d 66, 70–71 (3d Cir. 1989); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 229–30 (3d Cir. 1987).

respond properly and fairly." Hittinger specifically identified six topics on which discovery was necessary:

- The ownership of [Abington], including both tangible and real property;

- The control of [Abington], including the control over day-to-day operations, policy, finances, curriculum, and its advising system;

- The Quaker Religion as . . . presented in curriculum and activities at [Abington];

- The religious affiliation of the [Abington] student body, faculty, staff, and School Committee;

- Any requirement(s) that [Abington] students, faculty, staff or School Committee members follow or subscribe to the tenets of the Quaker religion and any "training" faculty or staff receive regarding the Quaker Religion; and

- The [Abington] "School Committee," its composition, activities and alleged control over [Abington].

8

To accomplish this discovery, Hittinger requested the depositions of Thomas Price, the three individual defendants, Abington's corporate designee, and "any other witnesses identified in those depositions with personal knowledge of relevant facts." In addition, the Does already had submitted several requests for production of documents relating to the same topics addressed in their Rule 56(f) motion, but Abington did not respond.

The District Court heard oral argument on Abington's motion in January 2005. Shortly thereafter, the Court issued a five-page order construing Abington's motion as one for summary judgment and granted it. The order rejected the Does' argument that "control is a factual test," but relied exclusively on Thomas Price's affidavit to conclude that the "facts" as recited therein supported the conclusion that Abington is, "as a matter of law, a religious organization" as well as "controlled by a religious organization." The Court ruled, therefore, that Abington is exempt from the ADA and dismissed Count I. It also declined to exercise supplemental jurisdiction over the remaining state-law counts under 28 U.S.C. § 1367 and dismissed them as well. The Does appealed that same day.[4]

_____

[4]The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. Prior to ruling on Abington's motion for summary judgment, the Court did not rule on the Does' Rule 56(f) motion; but after the Does appealed and the District Court lost jurisdiction over the

9

## II.  Discussion

### A.  Standards of Review

Our review of a district court's grant of summary judgment is plenary. *St. Surin*, 21 F.3d at 1313. Summary judgment is proper when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact. *Celotex*, 477 U.S. at 322–26. The substantive law identifies which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. at 248.

"When an order granting summary judgment is attacked as premature, we review a district court's refusal to delay action for an abuse of discretion." *St. Surin*, 21 F.3d at 1313 (citing *Radich*, 886 F.2d at 1393); *see also Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984).

---

case, it denied the Does' Rule 56(f) motion as moot.

B.  Analysis

As any practicing attorney can attest, federal litigation revolves around the generous and wide-ranging discovery provided by the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 26(a)(1) (initial disclosures); 26(a)(2) (disclosure of expert testimony); 26(a)(3) (pretrial disclosures); 30 (oral depositions); 31 (written depositions); 33 (interrogatories); 34 (entry onto land and production of documents and things); 35 (physical and mental examinations); 36 (requests for admission). These mechanisms were made necessary by the revolutionary switch from "fact pleading" to "notice pleading" that was embodied by the modern rules.  Stephen N. Subrin, *Fishing Expeditions Allowed: The Historical Background of the 1938 Federal Discovery Rules*, 39 B.C. L. REV. 691, 711 (1998) (quoting CHARLES E. CLARK, HANDBOOK OF THE LAW OF CODE PLEADING 41, 567–72 (2d ed. 1947) ("[Discovery mechanisms] are a necessary supplement to the system of simplified pleading.")); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002); Charles E. Clark, *Fundamental Changes Effected by the New Federal Rules*, 15 TENN. L. REV. 551, 564–68 (1939); Edson R. Sunderland, *The New Federal Rules*, 45 W. VA. L.Q. 5, 10–12, 19–27 (1938).  Rather than endless pleadings "served back and forth *ad infinitum* until the last issue of fact was tracked down and identified through the medium of declarations, bills, pleas, replications, rejoinders, surrejoinders, *etc.*" that had characterized common law litigation, *see* Abraham Rotwein, *Pleading and Practice Under the New Federal*

11

*Rules—A Survey and Comparison*, 8 BROOK. L. REV. 188, 195 (1939), modern civil procedure instead "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims," *Swierkiewicz*, 534 U.S. at 512.

As a result, it is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling*, 855 F.2d at 139. This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record. *See* FED. R. CIV. P. 56(c) (instructing that summary judgment be decided on the basis of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"); *Anderson*, 477 U.S. at 257 (explaining the non-moving party's burden at summary judgment rests on the assumption that the party "had a full opportunity to conduct discovery"). In this vein, the Supreme Court has explained that "[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under Rule 56(f)." *Celotex*, 477 U.S. at 326. Therefore, if the non-moving party believes that additional discovery is necessary, the proper course is to file a motion pursuant to Rule 56(f). *Dowling*, 855 F.2d at 139.

"District courts usually grant properly filed Rule 56(f) motions as a matter of course." *St. Surin*, 21 F.3d at 1314 (internal quotation marks omitted). This is particularly so when

12

there are discovery requests outstanding or relevant facts are under the control of the moving party. *See Ward v. United States*, 471 F.2d 667, 670 (3d Cir. 1973); *see also Sames*, 732 F.2d at 51–52; *Costlow v. United States*, 552 F.2d 560, 562–64 (3d Cir. 1977). If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion. *See Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845–46 (3d Cir. 1992). And whatever its decision, it is "improper" for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion. *St. Surin*, 21 F.3d at 1315.

On the basis of a single affidavit offered by the *movant*, the District Court here ruled that Abington is, "as a matter of law," a religious organization (or controlled by one) for purposes of the ADA.[5] Whether Abington qualifies for the ADA's religious exemption is a mixed question of law and fact, the answer to which depends, of course, on the existence of a

---

[5]The District Court's order does not distinguish between the two prongs of the ADA's religious exemption. The single paragraph analyzing whether Abington qualifies for the exemption begins by stating that "[t]he evidence on the record . . . shows that [Abington] is controlled by a religious institution." It then recites the various assertions contained in Price's affidavit before concluding that "[t]hese facts are sufficient to conclude [that Abington] is, as a matter of law, a religious organization."

record sufficient to decide it. The ADA's exemption can apply only if Abington (1) is a religious organization or (2) is controlled by a religious organization. *See* 42 U.S.C. § 12187. No court of appeals has yet fully examined the ADA's religious exemption, and the undeveloped state of this record makes us reticent to do so now.[6] Whatever the scope of that exemption, though, the District Court here needed to allow the parties to develop the record as to potentially relevant facts. The extent of discovery, of course, is within the Court's discretion, but the

---

[6]We leave it to the District Court (aided by counsel) to consider this issue in the first instance. The parties cite, *inter alia*: (1) Department of Justice regulations that expound on the ADA's religious exemption, 28 C.F.R. pt. 36, App. B; (2) opinion letters interpreting those regulations; (3) various district court cases applying the exemption, *Woods v. Wills*, 400 F. Supp. 2d 1145, 1159–62 (E.D. Mo. 2005); *Marshall v. Sisters of the Holy Family of Nazareth*, 399 F. Supp. 2d 597, 605–07 (E.D. Pa. 2005); *White v. Denver Seminary*, 157 F. Supp. 2d 1171, 1173–74 (D. Colo. 2001); and (4) other areas of the law that examine concepts of religion (*e.g.*, the First Amendment religion clauses) and control (*e.g.*, agency and *respondeat superior*). Without commenting on our eventual approval or disapproval of them, these resources appear to us to be a reasonable starting point in helping to decide the issue. *See also E.E.O.C. v. Kamehameha Schs./Bishop Estate*, 990 F.2d 458 (9th Cir. 1993) (discussing the scope of Title VII's exemption for religious schools).

circumstances of this case require more than was given.[7]

The Does' Rule 56(f) motion identified six areas of inquiry that, under any definition of the ADA's religious exemption, are relevant to deciding whether Abington is a religious organization or controlled by one. As to Abington's status as a religious organization itself, the Does sought information on any training in the Quaker religion that faculty and staff received; the religious make-up of the students, faculty, and staff; and how the Quaker religion is represented in the school's curriculum. As to Abington's being controlled by a religious organization, the proposed areas included Abington's ownership and the day-to-day oversight of its "operations, policy, finances, curriculum, and . . . advising." The Does proposed the deposition of Price, each of the three individual defendants, and Abington's corporate designee. Additionally, the Does had earlier requested of Abington—but had not received—documents that may have shed light on the issue.[8]

_____

[7]The Does properly note that in each of the district court cases to have ruled on this issue, *see supra* note 6, the docket sheets and opinions make clear that the courts did so only after sufficient discovery had taken place.

[8]At oral argument, Abington questioned why the Does did not file an affidavit of their own, detailing those facts within their knowledge that might indicate Abington is not a religious organization or controlled by one. We will not fault the Does for failing to provide information principally within the control

Since the Supreme Court removed the summary judgment procedure from disfavored status in the 1980s, some have opined that the pendulum has swung too far in the opposite direction. *See, e.g.*, Arthur R. Miller, *The Pretrial Rush to Judgment*, 78 N.Y.U. L. REV. 982 (2003); Patricia M. Wald, *Summary Judgment at Sixty*, 76 TEX. L. REV. 1897 (1998). We need not wade into that debate, though, to conclude that the Does should have been allowed some measure of discovery before summary judgment was entered against them. It may be that, after whatever discovery the District Court chooses to allow on remand, Abington does qualify for the ADA's religious exemption. One of the oldest primary and secondary schools in the country, long known for its Quaker heritage, superficially seems to be a strong candidate.[9] But discovery digs subsurface and may unearth facts that tend to support the contrary conclusion. Because the Does were not given an opportunity to marshal facts in aid of their argument, we vacate the District Court's grant of summary judgment and remand this case for further proceedings.

---

of Abington and which they could only have known second-hand.

[9]Abington does not argue that being held to the ADA's mandates would violate its First Amendment right to the free exercise of religion. *See, e.g.*, *Starkman v. Evans*, 198 F.3d 173 (5th Cir. 1999).